**NATIONAL INDEPENDENT COAL OPERATOR'S ASSOCIATION et al.,**
**Plaintiffs,**

v.

**Peter J. BRENNAN, Secretary of Labor Department of Labor, Washington, D. C., Defendant.**

**ASSOCIATION OF BITUMINOUS CONTRACTORS, INC., et al.,**
**Plaintiffs,**

v.

**Peter J. BRENNAN, Secretary of Labor Department of Labor, Washington, D. C., Defendant.**

**Civ. A. Nos. 1711–73, 2054–73.**

United States District Court,
District of Columbia.

Feb. 21, 1974.

John L. Kilcullen, Washington, D. C., for plaintiffs Nat. Independent Coal Operator's Assn. et al.

Francis T. Coleman, Washington, D. C., for plaintiffs Assn. of Bituminous Contractors, Inc., et al.

James G. Johnston, Dept. of Labor, David Orlikoff, Dept. of Justice, Washington, D. C., for defendant.

Before WRIGHT, Circuit Judge, and CORCORAN and ROBINSON, District Judges.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CORCORAN, District Judge.

The above-entitled matters having been consolidated and come on for trial on the merits on December 21, 1973; the Court having considered the pleadings, the motions for permanent injunctions filed by plaintiffs in both actions; plaintiffs' memoranda in support of said motion and supporting affidavits, defendant's memorandum in opposition to said motion, the memoranda and supporting affidavits filed by plaintiffs and defendant for trial, oral argument of counsel, and all proceedings heretofore had herein, and the Court being fully advised in the premises, now makes its findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

#### A. *The parties*

1. In C.A. 1711–73 the plaintiffs National Independent Coal Operator's Asso-

ciation and Rocky Mountain Coal Association are associations of operators of coal mines and coal processing facilities. The remaining 48 plaintiffs in C.A. 1711–73 are or have been owners and operators of coal mines and coal processing facilities.

2. In C.A. 2054–73, the plaintiff Association of Bituminous Contractors, Inc., is an association of construction companies that construct coal mines. The remaining 14 plaintiffs in C.A. 2054–73 are general and independent contractors who engage in the construction of coal mines.

3. Defendant Peter J. Brennan is the Secretary of the United States Department of Labor. In that capacity, he has executive responsibility for the implementation, operation and enforcement of Section 415 and Part C of Title IV of the Federal Coal Mine Health and Safety Act of 1969.

### B. *The Statutes*

4. The statutes involved are:

(a) the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 *et seq.* (1970), *as amended* (hereinafter cited as the Act). Title IV of the Act, 30 U.S.C. § 901 *et seq., as amended,* 30 U.S.C. § 901 *et seq.* (Supp. II, 1972), provides benefits to coal miners who are totally disabled due to pneumoconiosis, and to certain surviving dependents of coal miners whose death is due to pneumoconiosis or who are totally disabled by coal workers' pneumoconiosis at the time of their deaths (Act, Section 401); and

(b) the Black Lung Benefits Act of 1972, 30 U.S.C. § 901 *et seq.* (Supp. II, 1972), *amending* 30 U.S.C. § 901 et seq. (1970), which amended certain provisions of Title IV of the Act and added new provisions to that title in order to remedy certain deficiencies in Title IV and its administration.

### C. *Definitions*

5. "Pneumoconiosis" is defined in Section 402(b) of the Act, 30 U.S.C. § 902(b), as "a chronic dust disease of the lung arising out of employment in a coal mine." This definition is applicable to both Parts B and C of Title IV of the Act. Pneumoconiosis, sometimes called "black lung" disease, is a severely disabling and often fatal disease which once contracted, may progress to disablement without further exposure to coal dust.

"Total disability" is defined in Section 402(f) of the Act as having

the meaning given it by regulations of the Secretary of Health, Education, and Welfare except that such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time. Such regulations shall not provide more restrictive criteria than those applicable under Section 223(d) of the Social Security Act.

This definition of "total disability" is applicable to both Parts B and C of Title IV of the Act. The Secretary of Health, Education and Welfare has published the definition of "total disability" in 20 C.F.R. § 410.412 (1973).

A "miner" is defined in Section 402(d) of the Act as "any individual who is or was employed in a coal mine." This definition is applicable to both Parts B and C of Title IV of the Act.

An "operator" is defined in Section 3(d) of the Act, 30 U.S.C. § 802(d), as "any owner, lessee, or other person who operates, controls, or supervises a coal mine," and a "coal mine" is defined in Section 3(h) of the Act as

an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work or extracting in such area

bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means of method, and the work of preparing the coal so extracted, and includes custom coal preparation facilities.

These definitions are applicable to all of Title IV of the Act.

Pursuant to Sections 3(d), 422(a) and 426 of the Act, the Secretary of Labor promulgated regulations further defining the term "operator," to state that

. . . general and independent contractors, whose employees may be considered miners as defined in Section 402(d) of Title IV of the Act by virtue of the fact that such employees are employed in a coal mine as defined in Section 3(h) of the Act, may be considered operators for purposes of Sections 415, 422, and 423 of Title IV of the Act with respect to such employees. 20 C.F.R. § 725.302, 38 Fed. Reg. 26053 (1973).

### D. *Responsible Operators*

6. Section 422(h) of the Act authorizes the Secretary of Labor to establish standards, "which may include appropriate presumptions, for determining whether pneumoconiosis arose out of employment in a particular coal mine or mines." He may also establish regulations for the apportionment of liability among "more than one operator where such apportionment is appropriate."

7. Section 423 of the Act, 30 U.S.C. § 933, provides that as long as a State is not included on the Secretary's list of approved States under Section 421 of the Act, 30 U.S.C. § 931, each operator in that State must secure his liability for benefits under Section 422 by either "qualifying as a self-insurer in accordance with regulations prescribed by the Secretary [of Labor]," or insuring with a private insurer or a State fund that is "authorized under the laws of any State to insure workmen's compensation."

8. Under Section 424 of the Act, 30 U.S.C. § 934, in the event an operator has failed to insure the payment of ben-

efits pursuant to Section 423 or fails to pay any benefits due within a reasonable time, the Secretary of Labor shall pay any claims otherwise payable by such an operator, who shall, in turn, "be liable to the United States in a civil action" for the amounts paid by the Secretary. The Secretary of Labor must also pay the benefits where there is no operator who was required to secure the payment of such benefits.

9. Section 426(a) of the Act, 30 U.S.C. § 936(a) authorizes the Secretaries of Labor and Health, Education and Welfare "to issue such regulations as each deems appropriate to carry out the provisions" of Title IV of the Act. Pursuant to Sections 422(a), 422(c), 422(h) and 426, the Secretary of Labor promulgated regulations, designated 20 C.F.R. § 725.311, 38 Fed.Reg. 26054 (1973), and incorporated into 20 C.F.R. § 720.112, 38 Fed.Reg. 16968 (1973), which establish criteria for identifying the operator deemed liable for payment of benefits. These regulations provide, among other things, that the operator with whom the miner (on whose disability or death the claim is based) has "the most recent periods of cumulative employment of not less than one year" will be designated the "responsible operator." There then arises a presumption that

the miner's work-related pneumoconiosis arose in whole or in part sufficiently to occasion liability, out of his employment with such operator during the period or periods when he was employed in a mine or mines operated by such operator.

### E. *Medical Benefits*

10. Medical benefits for miners are provided for under Section 422(a) of the Act by the incorporation of Section 7 of the Longshoremen's and Harbor Workers' Compensation Act, *as amended*, 33 U.S.C. § 901 *et seq.* Section 412 of the Act contains no such incorporation.

11. Pursuant to Sections 422(a) and 426 of the Act, the Secretary of Labor has issued regulations which permit a coal miner who is receiving benefits on

account of total disability due to pneumoconiosis from the United States Department of Health, Education and Welfare, to file a new claim under Section 422. If the Secretary of Labor determines that such a miner is entitled to benefits under Section 422, he will continue to receive his benefits from the Department of Health, Education and Welfare, and will, in addition, be eligible for medical treatment benefits provided under Section 422. Such medical treatment benefits will be payable by the operator deemed liable, or the Secretary of Labor under the provisions of Sections 415 or 424. 20 C.F.R. § 720.109, 38 Fed. Reg. 16967 (1973); 20 C.F.R. § 725.102, 38 Fed. Reg. 26045 (1973).

12. Sections 422(a) and (b) of Part C of Title IV of the Act, 30 U.S.C. § 932, provide that where a claim for benefits is filed after December 31, 1973, in cases where a State is not included on the list of States approved by the Secretary of Labor as providing adequate coverage for pneumoconiosis, coal mine operators "shall be liable for and shall secure the payment of benefits" with respect to "death or total disability due to pneumoconiosis arising out of employment in such mine." Except as otherwise provided by regulation, the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq. as amended,* with certain exceptions enumerated in Section 422(a) of the Act, are applicable under that section. The Secretary of Labor is authorized to promulgate by regulation "such additional provisions . . . as he deems necessary to provide for the payment of benefits by [an] operator . . . ." Part C of Title IV of the Act was enacted in recognition of the ultimate responsibility of the coal mining industry to compensate its employees for disablement or death due to a disease (pneumoconiosis) which arose as an incident of the miner's employment in that industry.

#### F. *Medical Presumptions*

13. Under Section 411(c)(2) of the Act, "if a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable presumption that his death was due to pneumoconiosis." Similarly, under Section 411(c)(4),

> if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under (Title IV) and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis.

Under Section 422(h) of the Act, the Secretary of Labor has adopted for the purposes of Section 422 operator liability the regulations promulgated pursuant to Section 411 on government liability.

14. Pursuant to Sections 402(f), 411 and 426 of the Act, the Secretary of Health, Education and Welfare promulgated 20 C.F.R. Part 410, Subpart D (1973), that set forth standards for determining total disability and standards which otherwise deal with eligibility for benefits based upon the provisions of Section 411.

15. Pursuant to Section 422(h), the Secretary of Labor adopted 20 C.F.R. Part 410, Subpart D (except § 410.490) into his regulations published as 20 C.F.R. Part 718, 38 Fed. Reg. 16965–66 (1973).

#### G. *Medical Evidence*

16. Pursuant to Section 413(b) of the Act, 30 U.S.C. § 923(b), no claims for benefits under Part B shall be denied solely on the basis of the results of a chest roentgenogram (X-ray).

17. Under Section 430 of the Act, 30 U.S.C. § 940, the 1972 amendments to Part B of the Act on government liability shall be applicable to Part C of the Act on operator liability. The Secretary of Labor promulgated 20 C.F.R. Part 718 (1973) which implements the 1972 amendments to Part B of the Act as applicable to Part C.

18. Under 20 C.F.R. § 725.445, 38 Fed. Reg. 26060 (1973), any party, including an operator, may, upon request, retrieve documents, including medical evidence, from the administrative file for introduction as evidence at the formal hearing.

## H. *Retroactivity*

19. Section 422(c) of the Act states that coal miner operators must pay benefits to the same categories of persons who are entitled to benefits under Section 412(a) of the Act, 30 U.S.C. § 922(a), as those persons are defined in regulations of the Secretaries of Labor and Health, Education and Welfare. Section 412(a) imposes no restrictions relating to the miners' dates of employment on the government's liability under Part B of the Act.

10. Section 415 of the Act, 30 U.S.C. § 925, provides that the Secretary of Labor shall determine claims and pay benefits with respect to claims which are filed under that section from July 1, 1973, to December 31, 1973. Operators are participants in claims-determination proceedings under this section, are bound by those determinations, and become "liable to pay benefits to the claimant under Part C of [Title IV] for any month after December 31, 1973." The Secretary of Labor is authorized, upon consultation with the Secretary of Health, Education and Welfare, to "issue such regulations as are necessary or appropriate to carry out the purpose of this section."

Section 415 imposes no restrictions relating to miners' dates of employment on the government's liability under Part B of the Act.

21. Under Section 422(e), no operator shall be required to make any payment of benefits "for any period prior to January 1, 1974."

Under Section 422(f), claims for benefits must be filed within three years of the discovery of total disability or the date of death, due to pneumoconiosis. This subsection also provides that where a claimant under Section 422 filed for benefits based upon the "fifteen year presumption" contained in Section 411(c)(4) of the Act, 30 U.S.C. § 921(c)(4), his claim, if he is a miner, must be filed within three years "from the date of last exposed employment in a coal mine," or, if he is a surviving dependent, must be filed within 15 years "from the date of last exposed employment in a coal mine."

22. In 20 C.F.R. § 726.203, 38 Fed. Reg. 12498 (1973), the Secretary of Labor has promulgated an interpretative regulatory provision, which states that the Secretary of Labor is bound,

within the framework and intent of Title IV of the Act [to] find in appropriate cases that an operator is liable for the payment of benefits for some period after December 31, 1973, even though the employment upon which an operator's liability is based occurred prior to . . . the effective date of the Act or the effective date of any amendments thereto.

## I. *Special Findings as to Bituminous Contractors*

23. In addition to building and constructing coal mines, most members of plaintiff Association of Bituminous Contractors engage in construction projects which are not related to the coal mining industry. Employees are used interchangeably on coal mine and noncoal mine construction projects.

For the last dues paying year the members of the Association reported the

following as manhours worked in coal mine construction:

| | |
|---|---:|
| Less than 3,000 manhours | 129 |
| 3,000–10,000 | 40 |
| 10,000–35,000 | 37 |
| 35,000–50,000 | 11 |
| 50,000–100,000 | 14 |
| 100,000–200,000 | 10 |
| over 200,000 | 9 |

24. The individually named plaintiff-contractors are mostly small and medium size companies which generally employ from two to three employees up to about two-hundred and fifty employees.

25. The individually named plaintiff-contractors and other members of the Association do employ, as construction employees, persons who have worked for companies which engage in the mining and processing of coal.

26. The coal mine construction industry is a specialized segment of the construction industry. The designation "coal mine construction" refers to the end use to which the facilities constructed are to be put.

27. Coal mine construction as such does not involve the mining, processing or extracting of coal, and there is no showing that the plaintiff-contractors engage in the mining, processing or extracting of coal.

28. The vast bulk of coal mine construction work performed by members of the Association must be performed before any coal may be mined or processed at any given site.

29. Most repair work performed by coal mine construction companies is performed while the mine is not in operation.

30. Coal mine construction workers are not exposed to the same health or safety hazards as are workers engaged in the mining and processing of coal.

31. For purposes of determining responsibility for benefit payments beginning January 1, 1974, the Secretary has taken the position, by the promulgation of 20 C.F.R. § 725.302, that plaintiff-contractors and other companies which likewise engage in the building and constructing of coal mines, are coal mine operators. Pursuant to his determination, the Secretary has declared his intention to hold plaintiffs and other coal mine construction companies responsible for payment of benefits under Part C of Title IV of the Act.

32. In order for a company to be a coal mine operator within the meaning of the Act, it must be engaged in the mining, processing or extracting of coal.

33. Until a coal mine is constructed, there is no operator of the coal mine.

### CONCLUSIONS OF LAW

#### A. *Jurisdiction*

1. The Court has jurisdiction over the subject matter of and the parties to these actions.

2. Congress had the constitutional power to enact Title IV of the Act.

3. The Secretary of Labor is charged by law with the responsibilities of administering Section 415 and Part C of Title IV of the Act.

#### B. *C.A. 1711–73*

##### (i) *Liability*

4. Each of the plaintiffs in C. A. 1711–73 who either is or has been owner or operator of a coal mine or coal processing facility is an "operator" as that term is defined in the Act and the regulations promulgated by the Secretary of Labor pursuant to the Act, and is subject to the provisions of Section 415 and Part C of Title IV of the Act.

##### (ii) *Total Disability*

5. Pursuant to Section 402(f) of the Act, the Secretary of Health, Education and Welfare properly promulgated regulations, 20 C.F.R. § 410.412 (1973), defining "total disability." This definition adds only one phrase, "in the immediate area of his residence," to the language of Section 402(f). This addition was within the Secretary's discretion

since Section 402(f) specifically authorizes the Secretary to define "total disability."

Pursuant to Section 422(h) of the Act, the Secretary of Labor properly adopted 20 C.F.R. Part 410, Subpart D (except § 410.490) into his regulations published as 20 C.F.R. Part 718. The adoption of 20 C.F.R. Part 410, as it relates to medical criteria, definitions and standards, is required by Section 422(h).

### (iii) *Responsible Operator*

6. Pursuant to Sections 422(a), 422(c), 422(h) and 426 of the Act, the Secretary of Labor properly promulgated regulations, designated 20 C.F.R. § 725.311, and incorporated into 20 C.F.R. § 720.112, which establish criteria for identifying the operator deemed liable for the payment of benefits. These regulations conform with the mandates of the pertinent provisions of the Act.

■■ In promulgating his regulations which establish criteria for identifying a "responsible operator" and which establish a presumption of liability with regard to such operator, defendant has followed the mandate of the statute and has not exceeded his regulatory authority under the Act, and the provisions of the Act pursuant to which defendant's regulations were promulgated do not and will not deprive plaintiffs of their property without due process of law or deny them equal protection of the law in violation of the Fifth Amendment.

The Secretary's regulation establishing criteria for identifying a responsible operator, 20 C.F.R. § 725.311, was within his discretion because Section 422(h) permits, but does not require, the Secretary to apportion liability among more than one operator.

■■ Furthermore, it does not violate due process of law to place full liability on one of several operators responsible for the pneumoconiosis. Also, it is consonant with due process to presume that an operator for whom a miner worked for one year contributed to the miner's pneumoconiosis since there is a rational connection between the fact proven—the one-year employment—and the fact presumed—the contribution to the development of the disease.

### (iv) *Medical Benefits*

■ 7. Pursuant to Sections 422(a) and 426 of the Act, the Secretary of Labor properly issued regulations which permit a miner who is receiving benefits on account of total disability due to pneumoconiosis from the Department of Health, Education and Welfare, to file a new claim under Section 422 for medical treatment benefits. Such medical treatment benefits will be payable by the operator deemed liable, or the Secretary of Labor under the provisions of Sections 415 or 424. These benefits are essential to an effective benefits program and the "refiling" mechanism is not prohibited by the Act and indeed comports with its intent and policy.

### (v) *Medical Presumptions*

■ 8. Pursuant to Sections 422(h) and 422(f)(2) of the Act, the Secretary of Labor properly promulgated regulations applying the Section 411 presumptions to Section 422 operator liability. Therefore, the statutory provisions pursuant to which the Secretary's regulations were promulgated do not and will not deprive the plaintiffs in No. 1711–73 of their property without due process of law or deny them equal protection of the law.

### (vi) *Medical Evidence*

■■ 9. Pursuant to Section 430 of the Act, the Secretary properly promulgated regulations applying the 1972 amendments to Part B of the Act on government liability to Part C of the Act on operator liability. Moreover, Section 413(b) of the Act does not preclude the consideration of negative X-rays as material and competent evidence or even, as long as other evidence supports the X-rays, as the most persuasive evidence. Therefore, Section 413(b) of the Act is a valid exercise of legislative

power and does not offend due process of law.

### (vii) *Retroactivity*

 10. In promulgating his regulations which reflect the intent of Congress to make operators liable for the payment of benefits for periods beginning January 1, 1974, in cases where a miner, on whose disability or death a claim is based, died or became totally disabled prior to December 31, 1969, defendant has followed the mandate of the statute and has not exceeded his regulatory authority under the Act, and the retroactive operation of the Act does not deprive plaintiffs of their property without due process of law or deny them equal protection of the law in violation of the Fifth Amendment.

Section 422(e) of the Act limits only the periods for which benefits can be collected; it does not limit the eligibility of miners whose period of employment terminated prior to January 1, 1974.

In 20 C.F.R. § 726.203, the Secretary of Labor has properly promulgated an interpretative regulatory provision, which states that the Secretary of Labor is bound,

> within the framework and intent of Title IV of the Act [to] find in appropriate cases that an operator is liable for the payment of benefits for some period after December 31, 1973, even though the employment upon which an operator's liability is based occurred prior to . . . the effective date of the Act or the effective date of any amendments thereto.

The statute itself, as well as the legislative history, clearly indicates congressional intent that benefits be available under Section 422 where a claimant meets the filing requirements of that section, regardless of the termination of employment of the miner on whose death or disability the claim is based. It is clear that Congress intended to provide full protection to older, retired miners who have only recently discovered the disease or in whom the disease is still latent.

11. The plaintiffs in No. 1711–73 are not entitled to injunctive relief against the defendant Secretary of Labor.

### C. *C.A. 2054–73*

 12. The determination by the Secretary, set forth by regulation as 20 C.F.R. § 725.302, that all coal mine construction companies, whether or not they engage in the extraction of coal, are operators within the meaning of the Act exceeds and is inconsistent with the definition of operator stated at Section 3(d) of the Act.

13. The determination by the Secretary, set forth by regulation as 20 C.F.R. § 725.302, that such coal mine construction companies are operators within the meaning of the Act contravenes the legislative intent, scheme and purpose of Title IV. Coal mine construction companies are not operators within the meaning of the Act.

 14. The Act was not intended by Congress to be applied to coal mine construction companies who do not actually engage in coal extraction operations. The reference in the statutory definition of a coal mine, Section 3(h) of the Act, to equipment, structures and property "to be used in" a coal mine was meant by Congress to refer solely to the extracting of coal. There is nothing in the legislative history of the Act which suggests Congress meant that the statutory definition should be applied so expansively as to include those companies which construct coal mines but do not extract coal from them.

15. Injunctive relief, as requested by plaintiffs in C.A. 2054–73, is appropriate.

Accordingly, it is this 21st day of February, 1974,

*Ordered* that the permanent injunction prayed for in C.A. 1711–73 be, and the same is hereby, denied, and summary judgment in said action be, and the same is hereby, granted, in favor of defendant; and it is

*Further ordered* that, in C.A. 2054–73, the Secretary of Labor be, and he is

hereby, permanently enjoined from enforcing and applying any regulation or otherwise determining that general and independent contractors who do not actually engage in coal extraction operations are coal mine operators for purposes of Title IV of the Federal Coal Mine Health and Safety Act of 1969, *as amended* by the Black Lung Benefits Act of 1972, and summary judgment in said action be, and the same is hereby, granted in favor of plaintiff.