BITUMINOUS COAL OPERATORS' ASSOCIATION, INC., and each of its member companies listed, Appellants,

Association of Bituminous Contractors, Inc., Plaintiff-Intervenor,

v.

SECRETARY OF INTERIOR, et al., Appellees.

BITUMINOUS COAL OPERATORS' ASSOCIATION, INC., and each of its member companies listed, Plaintiffs,

Association of Bituminous Contractors, Inc., Appellant,

v.

SECRETARY OF INTERIOR, et al., Appellees.

Nos. 76–1190, 76–1191.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 24, 1976.

Decided Jan. 4, 1977.

---

**2.** Alternately, the buyers do submit abuse of discretion is the proper standard.

Guy Farmer, Washington, D. C. (William A. Gershuny, Farmer, Shibley, McGuinn & Flood, Washington, D. C.; William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., on brief), for appellant Bituminous Coal Operators' Association, Inc.

Francis T. Coleman and William H. Howe, Washington, D. C. (John R. Erickson, Counihan, Casey & Loomis, Washington, D. C., on brief), for appellant Association of Bituminous Contractors, Inc.

John M. Rogers, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., Washington, D. C., Paul R. Thomson, Jr., U. S. Atty., Roanoke, Va., Leonard Schaitman, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., on brief), for appellee Secretary of the Interior.

Steven B. Jacobson, Washington, D. C. (Harrison Combs, Washington, D. C., on brief), for appellee United Mine Workers of America.

Before CRAVEN, BUTZNER and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

Both the Association of Bituminous Contractors, Inc., and the Bituminous Coal Operators' Association, Inc., appeal an order of the district court upholding the authority of the Secretary of the Interior to cite coal mining companies for violations of federal health and safety standards committed by construction companies that the mining companies employ. The Secretary seeks dismissal of the suit for lack of jurisdiction, or, alternatively, affirmance of the judgment. We conclude that the district court had jurisdiction; that construction companies are subject to Titles I–III of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 801–878; and that the Secretary can enforce the Act against a mining company or a construction company, which it has employed, for violations committed by the construction company. Accordingly, although we do not subscribe to all of the conclusions of law reached by the district court, we affirm its judgment.[1]

I

Titles I,[2] II,[3] and III[4] of the Act and regulations promulgated under it establish and provide for enforcement of mandatory health and safety standards for the protection of coal miners. The Secretary's inspectors are authorized to require the operator of a coal mine, or his agent, to withdraw miners from a dangerous area.[5] Miners idled by a withdrawal order may recover limited compensation for lost wages.[6] Withdrawal orders may be reviewed by the Secretary through the Board of Mine Operations Appeals,[7] and the Board's decisions are reviewable by the courts of appeals.[8]

---

1. The district court's opinion is reported as *Bituminous Coal Operators' Association v. Hathaway*, 406 F.Supp. 371 (W.D.Va.1975).

2. 30 U.S.C. §§ 811–821.

3. 30 U.S.C. §§ 841–846.

4. 30 U.S.C. §§ 861–878.

5. 30 U.S.C. § 814.

6. 30 U.S.C. § 820.

7. 30 U.S.C. § 815; 43 C.F.R. §§ 4.1(4), 4.500.

8. 30 U.S.C. § 816.

In addition to closing a dangerous mine, the Secretary, after an administrative hearing, may impose civil penalties on coal mine operators who violate the Act.[9] These penalties may be enforced by district courts.[10]

Mining companies frequently employ independent, general contractors for both surface and subsurface construction work. These construction companies build coal preparation plants, tipples, conveyor equipment, storage silos, bath houses, office buildings, power lines, roads, drag lines, and shovels. They also construct underground facilities, such as shafts, slopes, and tunnels. Their work may be done before or after the mine is in operation. The construction companies, however, do not process the coal that they remove.

This controversy arises out of conflicting opinions of the Board of Mine Operations Appeals and the United States District Court for the District of Columbia over the status of mine construction companies. In *Affinity Mining Co.,* 2 IBMA 57, 1971–73 OSHD ¶ 15,546 (1973) and *Wilson v. Laurel Shaft Construction Co., Inc.,* 1 IBMA 217, 1971–73 OSHD ¶ 15,387 (1972), the Board held that coal mine construction companies were subject to the health and safety standards of the Act and that they could be cited for violations. In contrast, the District Court for the District of Columbia held that the Secretary could not cite mine construction companies for violating the Act. *Association of Bituminous Contractors, Inc. v. Morton,* Civil No. 1058–74 (D.D.C. May 23, 1975), *appeal pending sub nom. Association of Bituminous Contractors, Inc. v. Kleppe,* Nos. 75–1931/75–1932 (D.C.Cir.). Complying with that court's decision, the Secretary ordered his inspectors to issue citations to mining companies for violations of the Act committed by the construction companies they employ. That order precipitated this case.

## II

The complaint alleges that jurisdiction is founded on 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act), and 5 U.S.C. § 551 *et seq.* (Administrative Procedure Act). On appeal, the Secretary questioned for the first time the district court's jurisdiction, contending that orders of the Secretary are reviewable only by a court of appeals, pursuant to 30 U.S.C. § 816(a).

While a literal reading of § 816(a) supports the Secretary, it is apparent, from the context of this section, that the review by the courts of appeals to which it refers deals with citations issued by inspectors and adjudicated by the Board of Mine Operations Appeals. But in this case, which deals with pre-enforcement review, the procedure set forth in § 816(a) is not appropriate because no administrative record has been developed. Nonetheless, the provisions for judicial review in §§ 816, 819 and 820 indicate that Congress did not intend the action of the Secretary dealing with the enforcement of health and safety standards to be committed by law to agency discretion within the meaning of 5 U.S.C. § 701(a)(2). Because the Act neither states nor implies that § 816(a) furnishes the exclusive procedure for obtaining judicial review, other procedures are not precluded. Consequently, the Administrative Procedure Act is applicable, and the Secretary's order is reviewable. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 139–41, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The complaint's allegation of a federal question sustains jurisdiction, and the application for declaratory and injunctive relief was properly made in the district court where a record could be developed. 5 U.S.C. § 703. *Cf. Rusk v. Cort,* 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962); K. Davis, Administrative Law Text § 23.03 (3d ed. 1972).

---

**9.** 30 U.S.C. § 819(a)(1) and (a)(3).

**10.** 30 U.S.C. § 819(a)(4). Also, an operator who wilfully violates the Act may be prosecuted in the district courts. 30 U.S.C. § 819(b) and (c).

■ The critical question is whether the district court, having acquired jurisdiction, should have denied pre-enforcement review for failure to exhaust administrative remedies or for lack of ripeness. These defenses, however, are not jurisdictional, and the Secretary should have raised them, in the first instance, in the district court rather than on appeal. *Wilson Clinic & Hospital, Inc. v. Blue Cross of South Carolina,* 494 F.2d 50, 53 n. 4 (4th Cir. 1974).

■ Quite apart from the untimely assertion of these defenses, they lack merit. Exhaustion of administrative remedies is not required in this case, because of the Secretary's order to cite mining companies for their contractors' violations is binding, not only on the inspectors, but also on the administrative law judges and the Board of Mine Operations Appeals. *Republic Steel Corp.,* 5 IBMA 306, 1975–76 OSHD ¶ 20,233 (1975). Therefore, any attempt to follow administrative remedies would be futile, and consequently need not be exhausted. *NLRB v. Industrial Union of Marine & Shipbuilding Workers,* 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); *Johnson v. Seaboard Air Line Railroad Co.,* 405 F.2d 645, 652 (4th Cir. 1968).[11]

■ Ripeness depends on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Both tests are satisfied here. An issue is fit for judicial decision when it involves purely legal questions and when it concerns "final agency action," within the meaning of 5 U.S.C. § 704. In this case, the issue is purely legal for the question involves the interpretation of the Act against the background of undisputed facts. The Secretary's order is final agency action because it is binding on all concerned. Therefore, the issue is fit for judicial decision.

Secondly, hardship is also evident. Even though a mining company is not cited for a contractor's violation, it must take immediate steps to comply with the policy embodied by the Secretary's order. The company must undertake construction work itself, negotiate contracts of indemnity, or take other precautionary measures. This creates sufficient hardship to justify judicial review before a mining company is actually cited for a contractor's violation of the Act. *Cf. Abbott,* 387 U.S. at 152–54, 87 S.Ct. 1507.

■ For substantially similar reasons, we find no merit in the suggestion of the United Mine Workers, an intervening defendant, that the Operators' Association lacks standing to press this appeal. The record is sufficient to establish that the Secretary's order caused injury to interests of the Association's members within an area regulated by the Act. The Association, therefore, has standing. *Cf. United States v. SCRAP,* 412 U.S. 669, 683–90, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). We turn, therefore, to a discussion of the merits of the controversy.

### III

■ The contractors contend that they are not subject to the Act because construction work is not performed in a coal mine as defined by the Act. Title 30 U.S.C. § 802(h) defines a coal mine as follows:

"[c]oal mine" means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted, and includes custom coal preparation facilities;

The contractors assert that an essential element of the definition is that the area and

---

11. The futility of exhausting administrative remedies distinguishes this case from *Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965); and *Macauley v. Waterman Steamship Corp.,* 327 U.S. 540, 66 S.Ct. 712, 90 S.Ed. 839 (1946), upon which the Secretary relies.

its facilities be used in the work of extracting coal. They argue, "Until a contractor completes his construction work, there is simply no item or facility present which is capable of being used to extract, handle, or process coal. Construction work is an activity which takes place prior to mining or processing coal."

The contractors' argument is answered by the clause in the definition which provides that the area and facilities "to be used in" the work of extracting and processing coal are included in the definition of a coal mine. When a contractor sinks a mine shaft, excavates a tunnel, or builds a coal preparation plant, it is constructing a facility "to be used in" the work of extracting or processing coal.

Furthermore, contractors' employees are frequently subjected to the same hazards as miners.[12] For example, in Centennial Development Co., NORT 71–95 (November 26, 1971), the evidence disclosed that Centennial, a construction company, contracted with Island Creek Coal Co. to sink three shafts. When one of the shafts had reached a depth of about 825 feet, methane gas exploded injuring two of the contractor's workmen. A subsequent inspection revealed that Centennial had violated various provisions of the Act. The injury of those employees was not an isolated incident, for statistical evidence in the record before us indicates that the fatality rate for contractors' employees is greater than that for the rest of the coal mining industry.

Titles I, II, and III of the Act do not expressly exempt construction companies from coverage. Furthermore, since construction employees share the risks to which miners are exposed, we conclude that Congress did not implicitly exclude them from the Act's protection. The district court's ruling that the health and safety standards of the Act apply to work performed by the members of the Association of Bituminous Contractors, Inc., is soundly based on the broad definition of a coal mine. Its decision accords with similar rulings in *Association*

*of Bituminous Contractors v. Morton,* Civil No. 1058–74 (D.D.C. May 23, 1975), *appeal pending sub nom. Association of Bituminous Contractors, Inc. v. Kleppe,* Nos. 75–1931/75–1932 (D.C. Cir.); Republic Steel Corp., 5 IBMA 306, 1975–76 OSHD ¶ 20,233 (1975); Affinity Mining Co., 2 IBMA 57, 1971–73 OSHD ¶ 15,546 (1973); *Wilson v. Laurel Shaft Construction Co., Inc.,* 1 IBMA 217, 1971–73 OSHD ¶ 15,387 (1972); Centennial Development Co., NORT 71–95 (November 26, 1971); the Secretary's Order 2977 (August 21, 1975).

The only case that reaches a different conclusion is *National Independent Coal Operator's Association v. Brennan,* 372 F.Supp. 16 (D.D.C.1974). There, the court concluded that Title IV of the Act, which provides compensation for "black lung," was not intended by Congress to apply to coal mine construction companies that do not actually engage in coal extraction operations. Among the essential findings of fact made by the *Brennan* court was that "construction workers are not exposed to the same health or safety hazards as are [mining company employees]." 372 F.Supp. at 23. The record in the case before us, however, would not support a similar finding. This factual distinction, coupled with the differences between the safety regulations of Titles II and III and the black lung benefits of Title IV, establish that *Brennan* does not furnish persuasive authority for decision of the issues in this case.

We, therefore, conclude that construction companies must observe the health and safety standards set forth in the Act and the regulations that implement it.

## IV

■ The final issue raises questions about who is liable for a construction company's failure to comply with the health and safety standards. The Act authorizes the Secretary to impose substantial monetary sanctions against the operator of a coal mine in two ways. He can assess civil

---

**12.** Miner is defined in 30 U.S.C. § 802(g) as "any individual working in a coal mine."

penalties against an operator [13] and also require the operator to pay wages to miners idled by a withdrawal order.[14] The Act defines an operator as "any owner, lessee, or other person who operates, controls, or supervises a coal mine." [15]

The mining companies take the position that construction companies are operators within the meaning of the Act, and furthermore that they are directly liable for the monetary consequences of their own violations. The district court rejected this interpretation of the Act and held that construction companies are not operators. In reaching this conclusion, it followed the lead of the District Court for the District of Columbia, which had held that only a company "engaged in the mining, processing or extracting of coal" is an operator, and that "until a coal mine is constructed, there is no operator of the coal mine." *National Independent Coal Operator's Association v. Brennan,* 372 F.Supp. 16, 23 (D.D.C.1974). In another case, the same court ruled that an operator must be engaged in the control or supervision of a total coal mine. *Association of Bituminous Contractors, Inc. v. Morton,* Civil No. 1058–74 (D.D.C. May 23, 1975), *appeal pending sub nom. Association of Bituminous Contractors, Inc. v. Kleppe,* Nos. 75–1931/75–1932 (D.C. Cir.).

The conclusion that a construction company cannot be an operator fails to accord full consideration to all the essential elements of the definition of an operator. Obviously, a construction company is not ordinarily the owner or lessee of a mine. But the Act does not limit the term operator to owners and lessees. It expressly mentions any "other person who . . . controls or supervises a coal mine." A coal mine, as we have pointed out in part III, is not merely an area of land and its facilities presently used to extract and process coal; it also includes an area of land and facilities that are "to be used" in the future for the extraction and processing of coal. Thus, when a construction company is sinking a shaft, excavating a tunnel, or building a tipple, it is controlling or supervising a coal mine, for the facility on which it is working is to be used in the extraction or processing of coal. Therefore, contrary to *Brennan,* we conclude that a mine construction company may be deemed an operator even before coal extraction has begun.

Furthermore, we are not persuaded by *Morton* that to be an operator one must supervise a total coal mine. A single shaft, tunnel, or tipple, and the land on which each of these facilities is located, can constitute a separate coal mine within the Act's definition. The fact that the facility and land where it is located will be integrated into a larger operation only after it is completed does not exclude it from the Act's definition of a coal mine. Consequently, when a company exercises control and supervision over a specific area of land while it is constructing one of the facilities mentioned in the Act, it is functioning as an operator of a coal mine.

We, therefore, conclude that the Act authorizes the Secretary to issue withdrawal orders under § 814 and to impose monetary sanctions under §§ 819 and 820 against a construction company that violates the Act while it is exercising supervision and control over a facility that is to be used for extracting or processing coal.

■ Because the definition of operator also includes the owner or lessee, we further hold that the Secretary can impose liability on a mining company for a construction company's violations. Without exemption or exclusion, § 819 makes the operator of a coal mine in which a violation occurs subject to a civil penalty. Similarly, § 820 makes the operator of a coal mine liable to compensate coal miners who are idled by a withdrawal order. These sections, when read with the definition of operator, impose liability on the owner or lessee of a mine regardless of who violated the Act or created the danger requiring withdrawal. Since we have held that a

13. 30 U.S.C. § 819.

14. 30 U.S.C. § 820.

15. 30 U.S.C. § 802(d).

construction company's work is performed in a coal mine, it follows that any violations of the Act committed by it in the performance of its work occur in a coal mine, making the owner or lessee of that coal mine liable for a monetary sanction under §§ 819 and 820.

Alternatively, as the district court properly recognized, a construction company may be considered the statutory agent of an owner or lessee of a coal mine. The Act defines an agent as "any person charged with responsibility for the operation of all or a part of a coal mine or the supervision of the miners in a coal mine." [16]

In part III, we ruled that the construction companies performed their work in a coal mine as defined by the Act. Their employees, therefore, are miners, because the Act defines a miner as "any individual working in a coal mine." [17] The construction companies supervise the miners whom they employ. This supervision brings the construction company squarely within that part of the definition of a statutory agent which embraces "any person charged with responsibility for . . . the supervision of the miners in a coal mine."

The Act's broad definition of agent indicates that Congress did not intend to limit the vicarious liability of an owner or lessee to common law concepts of agency. Accordingly, we affirm the district court's ruling that operators may be held liable for construction company violations, because the construction companies are statutory agents of the owners and lessees of coal mines.

In sum, we conclude that the Act does not prohibit the Secretary from holding a mining company and a construction company jointly or severally liable for violations committed by the construction company. This opinion presents no occasion, however, for determining the proper allocation of liability in view of the myriad factual situations that may arise. Such determination, we believe, is a responsibility that can best be initiated by the Secretary through regulations and adjudication.

The judgment of the district court, denying an injunction against the Secretary and dismissing the complaint, is affirmed.