UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MINGO LOGAN COAL COMPANY,
Petitioner,

v.

SECRETARY OF LABOR; MINE SAFETY

AND HEALTH ADMINISTRATION;
FEDERAL MINE SAFETY AND HEALTH
REVIEW COMMISSION,
Respondents.

No. 97-1392

On Petition for Review of an Order
of the Federal Mine Safety & Health Review Commission.
(93-392)

Argued: October 27, 1997

Decided: January 8, 1998

Before WILKINS, NIEMEYER, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David J. Hardy, JACKSON & KELLY, Charleston, West
Virginia, for Petitioner. Robin Ann Rosenbluth, Office of the Solici-
tor, UNITED STATES DEPARTMENT OF LABOR, Washington,
D.C., for Respondents. **ON BRIEF:** J. Davitt McAteer, Acting Solici-
tor of Labor, Edward P. Clair, Associate Solicitor, W. Christian Schu-
mann, Counsel, Appellate Litigation, Office of the Solicitor, UNITED

STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Secretary of Labor issued Mingo Logan Coal Company, the production-operator of the Mountaineer Mine in Mingo County, West Virginia, a § 104(a) citation, see 30 U.S.C.A. § 814(a) (West 1986), for a training violation committed by its independent contractor, Mahon Enterprises. Mingo Logan contested the citation, arguing that the Secretary impermissibly issued it in violation of the "Enforcement Policy and Guidelines for Independent Contractors" (the Enforcement Guidelines) published by the Secretary in the Federal Register. See 45 Fed. Reg. 44,494, 44,497 (1980). The Federal Mine Safety and Health Review Commission, affirming the Administrative Law Judge, upheld the citation. The Commission concluded that the Secretary did not abuse his discretion in citing Mingo Logan for the violation. For the reasons set forth below, we affirm.

I.

In 1991, Mingo Logan contracted with Mahon, an independent contractor registered with the Mine Safety and Health Administration (MSHA), for the performance of various mine-related services at its Mountaineer Mine in Mingo County, West Virginia. Mahon was responsible for the hiring, training, and supervising of its own employees. Mahon hired Timothy Sergeant to work on a conveyor belt project in the mine. The Federal Mine Safety and Health Act of 1977 (the Mine Act) required Mahon to provide health and safety training to its employees. See 30 U.S.C.A.§ 825 (West 1986). Relying upon Sergeant's verbal representations that he was an "experi-

2

enced" miner, Mahon provided Sergeant with "newly employed experienced miner training." See 30 C.F.R. § 48.6 (1997).

On July 28, 1992, Sergeant was injured when he placed his back up against a moving conveyor in an attempt to free a fellow miner whose arm was caught between the belt and a bottom roller. On August 3, 1992, Inspector Robert Rose conducted a records audit of Mahon's training records and personnel files. These records revealed that Sergeant did not qualify as an "experienced" miner, and therefore, he should have received new miner training rather than experienced miner training. See 30 C.F.R. § 48.5 (1997).

As a result, Inspector Rose issued a § 104(a) citation, see 30 U.S.C.A. § 814(a) (West 1986), to Mingo Logan for violating 30 C.F.R. § 48.5 by failing to ensure that an employee of its independent contractor was properly trained, and issued a § 104(g)(1) withdrawal order citation, see 30 U.S.C.A. § 814(g)(1) (West 1986), to Mahon.[1] Mahon paid a civil penalty for the violation. On January 8, 1993, Inspector Rose subsequently modified Mingo Logan's § 104(a) citation to a § 104(g)(1) withdrawal order citation, and Mingo Logan was

_____

[1] 30 U.S.C.A. § 814(a) (West 1986) provides, in part, that:

> If, upon inspection or investigation, the Secretary . . . believes that an operator of a coal or other mine subject to this chapter has violated this chapter, or any mandatory health or safety standard, rule, order, or regulation promulgated pursuant to this chapter, he shall, with reasonable promptness, issue a citation to the operator.

30 U.S.C.A. § 814(g)(1) (West 1986) provides, in part, that:

> If, upon any inspection or investigation pursuant to section 813 of this title, the Secretary . . . shall find employed at a coal or other mine a miner who has not received the requisite safety training as determined under section 825 of this title, the Secretary . . . shall issue an order under this section which declares such miner to be a hazard to himself and to others, and requiring that such miner be immediately withdrawn from the coal or other mine, and be prohibited from entering such mine until an authorized representative of the Secretary determines that such miner has received the training required . . . .

assessed a $5500 fine. On April 28, 1993, however, the § 104(g)(1) order was rescinded and the § 104(a) citation was reinstated.

Mingo Logan challenged the § 104(a) citation in a hearing before an ALJ. In his February 15, 1995, order, the ALJ concluded that the Secretary's decision to cite Mingo Logan for the training violation of its independent contractor was not an abuse of discretion. Accordingly, the ALJ upheld the enforcement of the citation and ordered Mingo Logan to a pay a $100 fine.**2** The Commission affirmed enforcement of the citation by order dated March 3, 1997. It agreed with the ALJ that the Secretary may hold a production-operator strictly liable for any violation of the Mine Act occurring at its mine site, including those committed by its independent contractors. Relying upon Mingo Logan's significant involvement in the day-to-day operation of the mine and the Secretary's adherence to the Enforcement Guidelines' standard for enforcement action, the Commission concluded that the Secretary did not abuse his discretion in citing Mingo Logan. The Commission further noted that the citation to Mingo Logan as lessee and production-operator of the mine promoted the protective purposes of the Mine Act by encouraging Mingo Logan to use only those independent contractors with strong safety records.

On appeal, Mingo Logan argues that the Secretary impermissibly abandoned his policy, published in the Federal Register, regarding training violations by independent contractors. Mingo Logan believes that the policy prohibits the Secretary from citing production-operators for training violations involving their independent contractors' employees. We reject Mingo Logan's claim and conclude that the Secretary did not abandon any binding policies, but rather acted within his discretion. In so holding, we note that (1) the Enforcement

_____

**2** The Secretary asserted that Mingo Logan's violation was "significant and substantial." See 30 U.S.C.A. § 814(a) (West 1986) (noting the adverse consequences of a finding that a violation was significant and substantial). The ALJ, however, rejected the Secretary's assertion, concluding that the Secretary had failed to show that there was a reasonable likelihood of an injury-producing event as a result of this training violation. To the contrary, the ALJ found that Sergeant's injuries "resulted from a lack of common sense, rather than any lack of appropriate training." (J.A. at 227.) The Secretary has not appealed this finding.

4

Guidelines are "general statements of policy" and therefore are not binding upon the Secretary, and (2) the Secretary nevertheless acted consistently with the Enforcement Guidelines.

II.

Congress delegated the responsibility for implementing the Mine Act to the Secretary of Labor. As a result, the Secretary's interpretation of the accompanying statutes and regulations is entitled to substantial deference by the courts. See Secretary of Labor v. Mutual Mining, Inc., 80 F.3d 110, 114 (4th Cir. 1996). When reviewing a challenge to the Secretary's interpretation of his own regulations, we need only determine whether the Secretary's interpretations are in accord with the Mine Act. See id. at 115. Because we conclude that the Secretary's view that it may cite both the independent contractor and the production-operator for a training violation involving an employee of the independent contractor promotes the Mine Act's goal of protecting the health and safety of the miner and is a reasonable interpretation of his statutory authority, we affirm.

The Mine Act provides that:

> If, upon inspection or investigation, the Secretary or his authorized representative believes that an operator of a coal or other mine subject to this chapter has violated this chapter, or any mandatory health or safety standard, rule, order, or regulation promulgated pursuant to this chapter, he shall, with reasonable promptness, issue a citation to the operator.

30 U.S.C.A. § 814(a) (West 1986) (emphasis added). Congress defined "operator" to include "any owner, lessee, or other person who operates, controls, or supervises a coal or other mine or any independent contractor performing services or construction at such mine." 30 U.S.C.A. § 802(d) (West 1986). In Bituminous Coal Operators' Ass'n v. Secretary of Interior, 547 F.2d 240 (4th Cir. 1977), we held, and Mingo Logan does not dispute, that the Secretary may impose liability for safety violations involving an independent contractor upon either the independent contractor or the production-operator, or both.**3**

_____

**3** Although we decided Bituminous Coal Operators' Ass'n v. Secretary of Interior, 547 F.2d 240 (4th Cir. 1977), under the Mine Act's predeces-

5

Id. at 246-47 (holding "that the Act does not prohibit the Secretary from holding a mining company and a construction company jointly or severally liable for violations committed by the construction company").

Mingo Logan contends, however, that the Secretary has limited this statutory authority by publishing a policy specifically governing the enforcement of training violations. The policy relied upon by Mingo Logan was published in the Federal Register as part of the Enforcement Guidelines disseminated by the MSHA to "be used by inspectors as guidance in making individual enforcement decisions." 45 Fed. Reg. 44,494, 44,495 (1980). It provides that:

> An order should be issued under section 104(g) of the Act of [sic] the direct employer of any miner who has not received the required training under Part 48. This means that a 104(g) order should be issued to the independent contractor for any persons who are directly employed by the independent contractor and not properly trained. Similarly, a 104(g) order should be issued to the production-operator for any untrained persons directly employed by the production-operator.

Initial Enforcement Guidelines for Independent Contractors, 45 Fed. Reg. 44,494, 44,498 (1980).[4] Mingo Logan interprets this language to provide that only independent contractors, not production-operators, will be cited for training violations involving the employees of independent contractors. We find that Mingo Logan's analysis is flawed.

_____

sor, the Federal Coal Mine Health and Safety Act of 1969, its holding regarding whom the Secretary may cite for independent contractor violations applies with equal force to the Mine Act. See Harman Mining Corp. v. Federal Mine Safety & Health Review Comm'n , 671 F.2d 794, 797 n.2 (4th Cir. 1981) (noting that "[c]ases construing whom the Secretary of [Labor] may cite under the Coal Act for independent contractors' violations have continuing validity under the Mine Act").

[4] Even though the policy relied upon by Mingo Logan appears to limit the issuance of § 104(g) withdrawal orders only, Mingo Logan contends that this provision should be read to encompass§ 104(a) citations when the § 104(a) citation results from a training violation.

6

First, we agree with the Commission, and Mingo Logan concedes, that the Enforcement Guidelines are simply "general statements of policy" which the Secretary need not strictly observe. See Brock v. Cathedral Bluffs Shale Oil Co., 796 F.2d 533, 538-39 (D.C. Cir. 1986) (Scalia, J.) (holding that the Secretary's Enforcement Guidelines did not establish binding, substantive rules which the Secretary was required to strictly observe). Therefore, even if the Secretary did not strictly adhere to the provisions outlined in the Enforcement Guidelines, this would not necessarily prove fatal to the Secretary's enforcement decision. As then-Judge Scalia explained, the Enforcement Guidelines expressly warn that they are only a "general enforcement policy" that do not change the basic compliance responsibilities of production-operators which include assuring compliance with the standards and regulations which apply to the work being performed by the independent contractors at the mine. See id. at 538 (citing General Enforcement Policy for Independent Contractors, 45 Fed. Reg. 44,494, 44,497).

Unlike the court in Cathedral Bluffs, however, we need not determine whether the Secretary's decision to arguably deviate from the Enforcement Guidelines should be overturned because the Secretary's decision to issue a citation to Mingo Logan was not contrary to, but consistent with, the plain language of the Enforcement Guidelines. Two sections of the Enforcement Guidelines are pertinent to this appeal -- the general provisions and the specific provisions regarding training violations.

The more general provisions outline the "overlapping" compliance responsibilites of the production-operators and the independent contractors. The Enforcement Guidelines provide four examples of when it would ordinarily be appropriate, "as a general rule," to issue citations to both the production-operator and the independent contractor for violations involving the independent contractor. See 45 Fed. Reg. 44,494, 44,497.[5] We agree with both the ALJ and the Commission

_____

[5] The Enforcement Guidelines state:

> [A]s a general rule, a production-operator may be properly cited
> for a violation involving an independent contractor: (1) when the
> production-operator has contributed by either an act or an omis-

7

that substantial evidence was presented to show that Mingo Logan's employees were at risk as a result of Mahon's training violation, one of the examples expressly noted in the Guidelines for when "overlapping" compliance should be enforced.**6** Therefore, the Secretary's issuance of a citation to Mingo Logan was within the criteria set forth in the Enforcement Guidelines.

We further find that, contrary to Mingo Logan's assertion, the Secretary's action was consistent with his specific policy regarding training violations. Nothing in the policy's language attempts to abrogate the Secretary's overall scheme to hold production-operators ultimately liable for violations occurring in their mines. The policy simply emphasizes that independent contractors should be held directly liable for training violations involving their employees. It in no way, however, limits the Secretary's authority to also issue a citation to the production-operator. Moreover, we agree with the Commission that holding production-operators liable for the training violations of their independent contractors encourages production-operators to employ only those independent contractors with exemplary health and safety records, thereby promoting the protective purposes of the Mine Act.

_____

sion to the occurrence of a violation in the course of an independent contractor's work, or (2) when the production-operator has contributed by either an act or omission to the continued existence of a violation committed by an independent contractor, or (3) when the production-operator's miners are exposed to the hazard, or (4) when the production-operator has control over the condition that needs abatement.

45 Fed. Reg. 44,494, 44,497 (1980).

**6** The ALJ and the Commission found that Mingo Logan and Mahon employees were generally in the same vicinity so that an inadequately trained Mahon employee put Mingo Logan employees at risk. They also specifically found that while only Mahon employees staffed the conveyor belt operated by Sergeant, Mingo Logan employees were in the adjoining entryways such that if Sergeant had lit a cigarette or created another hazard, Mingo Logan employees would have been exposed to a dangerous situation.

8

III.

In conclusion, we affirm the orders of the ALJ and the Commission upholding the enforcement of the § 104(a) citation against Mingo Logan. The Secretary's voluntary adherence to Enforcement Guidelines to which he was not bound, coupled with Mingo Logan's involvement in the daily operations of the mine, convince us that the Secretary's decision to cite Mingo Logan for a training violation committed by its independent contractor was not an abuse of discretion.[7]

AFFIRMED

_____

[7] As a result of our disposition of this appeal, we need not address whether the Secretary has unreviewable discretion as to enforcement decisions, an alternative ground raised by the Secretary for enforcing the citation. See INS v. Bagamasbad, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); see also Auvil v. Grafton Homes, Inc., 92 F.3d 226, 231 (4th Cir. 1996).

9