**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 11/5/96**

**TENTH CIRCUIT**

---

JOY TECHNOLOGIES, INC., COAL
FIELD OPERATIONS,

       Petitioner,

    v.

SECRETARY OF LABOR, MINE
SAFETY AND HEALTH
ADMINISTRATION,

       Respondents.

No. 95-9540

---

**ON PETITION FOR REVIEW OF A DECISION BY
THE FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION**

---

W. Scott Railton (Christopher L. Killion and Marjorie P. Alloy with him on the
brief), Reed, Smith, Shaw & McClay, McLean, Virginia, appearing for the
Petitioner.

Robin A. Rosenbluth, Attorney (Thomas S. Williamson, Jr., Solicitor of Labor,
Edward P. Clair, Associate Solicitor, and W. Christian Schumann, Counsel,
Appellate Litigation, with her on the brief), U.S. Department of Labor, Office of
the Solicitor, Arlington, Virginia, appearing for the Respondents.

---

Before PORFILIO, TACHA, and BRORBY, Circuit Judges.

---

TACHA, Circuit Judge.

---

In this petition for review, we must examine the regulatory jurisdiction of the Mine Safety and Health Administration (MSHA) under the Federal Mine Safety and Health Act of 1977 (Mine Act), codified as amended at 30 U.S.C. §§ 801-962. Joy Technologies, Inc., (Joy) manufactures and sells mining equipment and sends service representatives onto mine property in connection with the sale of its products. In enforcing a safety regulation promulgated under the Mine Act, the Federal Mine Safety and Health Review Commission (FMSHRC) upheld the assessment of a penalty by MSHA against Joy for its failure to provide required annual refresher training to its service representatives. On appeal, Joy contests MSHA's jurisdiction to assess the penalty, arguing that (1) Joy is not an "independent contractor" because it did not have a contract for services and did not control any mining related operations and (2) Joy is not an "operator" because it was not sufficiently involved in the extraction process and was not continually present at the mine. We have jurisdiction over this petition for review pursuant to 30 U.S.C. § 816(a) and affirm.

**BACKGROUND**

I.    **Federal Mine Safety and Health Act**

In 1969, Congress enacted the Federal Coal Mine Health and Safety Act (Coal Mine Act), Pub. L. No. 91-173, 83 Stat. 742, which subjected to regulation every coal mine affecting commerce and every operator of such coal mine. § 4,

83 Stat. at 744. Section 3(d) of the Coal Mine Act defined an "operator" as "any owner, lessee, or other person who operates, controls, or supervises a coal mine." § 3(d), 83 Stat. at 744. Although section 3(d) did not specifically include independent contractors within the definition of "operator," courts interpreted this provision to include independent contractors whenever the contractors, in performing services at a coal mine, controlled or supervised all or part of the mine. See Association of Bituminous Contractors, Inc. v. Andrus, 581 F.2d 853, 860-62 (D.C. Cir. 1978) ("[A]n independent construction company, which operates, controls, or supervises excavation work . . . is an 'operator of a coal mine' within the meaning and purposes of [the Coal Mine Act]."); Bituminous Coal Operators' Ass'n v. Secretary of Interior, 547 F.2d 240, 246 (4th Cir. 1977) ("[W]hen a company exercises control and supervision over a specific area of land while it is constructing one of the facilities mentioned in the act, it is functioning as an operator of a coal mine.").

In 1977, in order to improve and promote safety and health in the nation's mines, Congress amended the Coal Mine Act, renaming it the Federal Mine Safety and Health Act. See Pub. L. No. 95-164, §§ 101, 102(a), 91 Stat. 1290. Congress broadened section 3(d) of the Coal Mine Act to include in the definition of operator "any independent contractor performing services or construction at [a] mine." 30 U.S.C. § 802(d). The Secretary of Labor, through MSHA, an agency

within the Department of Labor, see 29 U.S.C. § 557a, issued a regulation defining an independent contractor as "any person . . . [who] contracts to perform services or construction at a mine." 30 C.F.R. § 45.2(c).

## II.    Procedural History

On April 6, 1992, Joy Technologies delivered a new continuous miner to the Sanborn Creek Mine, operated by Somerset Mining Company (Somerset) in Gunnison County, Colorado. On this occasion, as well as on at least four previous occasions during 1992, Dick McElhannon, a Joy service representative, visited the Sanborn Creek Mine and performed a variety of services, including assuring that Joy's equipment was delivered in proper condition, advising and assisting in repairs, and procuring necessary replacement parts. McElhannon's own reports show that he helped Somerset's maintenance staff in "troubleshooting" problems with the equipment both above ground in the mine's maintenance shop and below ground in the mine. McElhannon, however, did not personally unload, assemble, or service any machine. The parties do not dispute that Joy did not have a service contract with Somerset. The only contracts between the parties were for the sale of parts and new equipment.

On April 7, 1992, an MSHA inspector entered the maintenance shop while Somerset's maintenance crew was assembling the continuous miner. The inspector observed McElhannon using a remote control to move the main frame of

- 4 -

the continuous miner to help a Somerset mechanic pin the machine together. The inspector believed that McElhannon was operating the remote control in a hazardous manner. When the inspector determined that McElhannon had not received eight hours of annual refresher training as required of all miners under 30 C.F.R. § 48.28(a), the inspector issued a citation against Joy.

Joy contested MSHA's citation and civil penalty proposal, and a hearing was held before an administrative law judge on July 20, 1993. The ALJ issued a decision affirming the violation and assessing a civil penalty of $100 against Joy. Joy Technologies, Inc., 15 F.M.S.H.R.C. 2147, 2152 (1993). Thereafter, FMSHRC granted Joy's petition for review, and on August 14, 1995, FMSHRC issued a final decision affirming the ALJ's decision that Joy was both an independent contractor and an operator within the meaning of the Mine Act. Joy Technologies, Inc., 17 F.M.S.H.R.C. 1303 (1995). Relying on a previous decision, Bulk Transp. Servs., Inc., 13 F.M.S.H.R.C. 1354, 1358 n.2 (1991), FMSHRC concluded that Joy did not need a specific service contract with Somerset to qualify as an independent contractor. FMSHRC did not address Joy's argument that control was required for independent contractor status. FMSHRC further concluded that Joy was an operator, applying the two-part test set forth in FMSHRC's Otis Elevator Co. line of cases: Otis Elevator, Inc., 11 F.M.S.H.R.C. 1896 (1989) (Otis I), and Otis Elevator Inc., 11 F.M.S.H.R.C. 1918 (1989) (Otis

II), aff'd on other grounds, 921 F.2d 1285 (D.C. Cir. 1990). Under this test, FMSHRC examines (1) "the independent contractor's proximity to the extraction process" and (2) "the extent of [the contractor's] presence at the mine." Otis I, 11 F.M.S.H.R.C. at 1902. Applying this test, the Commission found that Joy was an operator because it "engaged in activities essential to the extraction process" and that "Joy's contacts with the mine were more than de minimis." Joy Technologies, Inc., 17 F.M.S.H.R.C. at 1307-08.

## DISCUSSION

### I. Standard of Review

At the outset, we address the question of the appropriate standard of review to apply to MSHA's interpretation of section 3(d) of the Mine Act. In reviewing MSHA's interpretation, we must first inquire "whether Congress has directly spoken to the precise question at issue." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984). If a statute's meaning is clear and unambiguous, the inquiry ends. Id. at 842-43. If a statute is silent or ambiguous on a specific issue, we give deference to the interpretation adopted by the agency entrusted with administering the statute. Id. at 842-45; Thunder Basin Coal Co. v. FMSHRC, 56 F.3d 1275, 1277 (10th Cir. 1995); Utah Power & Light Co. v. Secretary of Labor, 897 F.2d 447, 449-50 (10th Cir. 1990); Emery Mining Corp. v. Secretary of Labor, 744 F.2d 1411, 1415 (10th Cir. 1984).

We must uphold the agency's interpretation as long as that interpretation is one of the permissible interpretations the agency could have selected. Chevron, 467 U.S. at 843; Thunder Basin, 56 F.3d at 1277; Utah Power & Light Co., 897 F.2d at 450. If a regulation promulgated by the agency is ambiguous, an interpretation "which is reasonable and consistent with the statute . . . is to be preferred." United Telecommunications, Inc. v. Commissioner, 589 F.2d 1383, 1390 (10th Cir. 1978), cert. denied, 442 U.S. 917, (1979). If the Secretary of Labor and FMSHRC have conflicting interpretations of the Mine Act, the Secretary's interpretations rather than FMSHRC's are entitled to deference under Chevron. Secretary of Labor v. Western Fuels-Utah, Inc., 900 F.2d 318, 321 (D.C. Cir. 1990); Secretary of Labor v. Cannelton Industries, 867 F.2d 1432, 1435 (D.C. Cir. 1989). We next apply these principles to MSHA's construction of section 3(d) to determine whether Joy qualifies as both an "independent contractor" as well as an "operator" under the Mine Act.

## II. Joy's status as an "Independent Contractor"

We first determine whether Joy is an independent contractor under section 3(d) of the Mine Act. Section 3(d) states the following:

> "operator" means any owner, lessee, or other person who operates, controls, or supervises a coal or other mine <u>or any independent contractor performing services or construction at such mine</u>.

- 7 -

30 U.S.C. § 802(d) (emphasis added). MSHA's regulations implementing section 3(d) define an "independent contractor" as any person or business "that contracts to perform services or construction at a mine." 30 C.F.R. § 45.2(c). In contesting MSHA's jurisdiction, Joy argues that it is not an independent contractor under section 3(d) because: (1) it did not have a specific service contract with the mine and (2) it did not control the performance of any operations or services at the mine.

## A. Service Contract

Joy relies on the agency definition of "independent contractor" and argues that it is not an independent contractor because it does not have a contract "to perform services" with Somerset. Joy argues that the only contracts between Somerset and Joy were for the sale of goods. MSHA asserts that the language in the regulation referring to "contracts to perform services" is not limited to specific service contracts but encompasses services performed incidental to a contract of sale. MSHA has concluded that a party is an independent contractor within the meaning of section 3(d) if it performs significant services, under contract or otherwise, on mine property. Because we find that neither Congress nor MSHA's definition has spoken to the precise question of whether a service contract is required, we defer to MSHA's reasonable interpretation that such a contract is not required.

Whatever clarity exists from the agency's definition of "independent contractor," standing alone, is rendered ambiguous when the definition is read in conjunction with the language, history, and purpose of the statutory provision it is meant to implement. The statutory language in section 3(d) of the Mine Act is silent on the meaning to be accorded to the term "independent contractor" in the phrase "independent contractor performing services . . . at [a] mine." The statute itself neither mandates nor precludes the agency's interpretation that a specific service contract is not required.

In addition, the legislative history suggests that a specific contractual relationship is not required for independent contractor status. A Senate report accompanying the Mine Act, which amended the definition of "operator" to include the independent contractor language, states that Congress intended to include within the act those "who are engaged in construction at [a] mine, or who may be, under contract or otherwise, engaged in the extraction process for the benefit of the owner or lessee of the property." S. Rep. No. 95-181, 95th Cong., 1st Sess. 14, reprinted in 1977 U.S.C.C.A.N. 3401, 3414 (emphasis added) (hereinafter Senate Report). FMSHRC, in applying the statute, has consistently stated that "[o]ur focus is on the actual relationships between the parties, and is not confined to the terms of their contracts." Joy Technologies, Inc., 17

F.M.S.H.R.C. at 1306 (citing <u>Bulk Transp. Servs., Inc.</u>, 13 F.M.S.H.R.C. at 1358, n.2 (1991)).

Finally, an interpretation of "independent contractor" that excludes all persons or businesses because they do not have a service contract would be at odds with the purpose of the Mine Act. We are mindful of the rule that "'a regulation must be interpreted so as to harmonize with and further and not to conflict with the objective of the statute it implements.'" <u>Emery Mining Corp.</u>, 744 F.2d at 1414 (quoting <u>Trustees of Ind. Univ. v. United States</u>, 618 F.2d 736, 739 (Cl. Ct. 1980)). Under Joy's interpretation, a party performing services at a mine could avoid the requirements of the Act by not setting forth the terms of its relationship with the mine in a contract. Such an interpretation would produce a result which fails to protect the safety and health of the nation's miners, the primary purpose of the Mine Act. We refuse to give effect to an interpretation of a regulation which is not "reasonable and consistent with the statute" that the regulation is meant to implement. <u>United Telecommunications, Inc</u>, 589 F.2d at 1390. Joy's interpretation, although apparently drawn from the language of MSHA's own regulation, would do just that. Thus, we conclude that in light of the language, history and purpose of the Mine Act, a service contract is not required for independent contractor status under section 3(d).

**B. Control**

Joy also asserts that it is not an independent contractor under section 3(d) because it did not have authority to control any mining-related operations and that control is a prerequisite under the statute. Joy argues that "independent contractor" is an established common law term and that under the common law, an independent contractor is a person who contracts to perform work for another but is "not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Restatement (Second) of Agency § 2(3). Joy argues that at all times, McElhannon did not control any operations but merely gave advice or assistance while Somerset's own maintenance crew performed the work associated with the machinery. Joy contends that we should not defer to the agency's construction of a term "if it is based on general common law principles rather than the agency's expertise." Board of County Comm'rs v. Isaac, 18 F.3d 1492, 1497 (10th Cir. 1994).

The Secretary, on the other hand, argues that in amending section 3(d) of the Mine Act to include "independent contractors performing . . . services at [a] mine," Congress did not merely incorporate a common law term but created a broader statutory concept. The Secretary maintains that a broad interpretation of independent contractor, unmoored from its common law meaning, is consistent with the expansive statutory language "independent contractor performing

services at a mine" and is necessary to accomplish the remedial purposes of the statute. See Cannelton Indus., 867 F.2d at 1437 (stating that the primary purpose of the Mine Act is to "protect mining's most valuable resources--the miner"). Accordingly, the Secretary argues that the statutory provision must be interpreted under the remedial purposes of the Mine Act, and not under traditional agency law principles. See id. (stating that Congress intended the Mine Act to be liberally construed to accomplish its remedial purposes); Cyprus Indus. Minerals Co. v. FMSHRC, 664 F.2d 1116, 1118 (9th Cir.1981) (same).

We agree with the Secretary and decline to adopt a common law test for determining who is an "independent contractor" under the Mine Act. In amending section 3(d) of the Mine Act, Congress did not state whether the term "independent contractor" should be construed narrowly under the common law or given a more expansive interpretation, as it has done in other statutes. See, e.g., United States v. W.M. Webb, Inc., 397 U.S. 179, 182-83 (1970) (noting that in the Federal Insurance Contributions Act, Congress intended "employee" to be defined "under the usual common law rules"); Antenor v. D & S Farms, 88 F.3d 925, 929 (11th Cir. 1996) (noting that in the Migrant and Seasonal Agricultural Workers Protection Act, Congress stated that "employee" and "independent contractor" should "not be construed in their limited common law sense"). Absent such direction by Congress, we must examine both the language and

purposes of the statute in deciding whether to limit the term "independent contractor" to its common law meaning. See Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (stating that a term should be given its common law meaning "'unless the statute otherwise dictates'" or unless such a construction "would thwart the congressional design or lead to absurd results") (citations omitted). We conclude that a strict adherence to the common law distinction between an employee and an independent contractor is inconsistent with the broader statutory language that Congress chose and would thwart the remedial purposes of the Mine Act. Accordingly, we agree with the Secretary that a broader construction is appropriate.[1]

As with all matters of statutory interpretation, we begin with the language of the statute. Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). We are persuaded that the phrase "independent contractor

---

[1]In other contexts, courts have often been asked to construe the meaning of the term "employee" where the statute containing the term "does not helpfully define it." Darden, 503 U.S. at 322. In some cases, courts have given the term an expansive meaning, consistent with "the history, terms and purposes of the legislation." NLRB v. Hearst, 322 U.S. 111, 123 (1944) (National Labor Relations Act); see also United States v. Silk, 331 U.S. 704, 711-12 (1947) (Social Security Act); Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947) (Fair Labor Standards Act); Antenor, 88 F.3d at 929 (Agricultural Workers Protection Act). In other cases, courts have adopted a common-law test for determining who qualifies as an "employee," concluding that the language of the statute precluded a broader meaning. See Darden, 503 U.S. at 323 (Employee Retirement Income Security Act); Community for Creative Non-Violence v. Reid, 490 U.S. 730, 740-41 (1989) (Copyright Act).

performing services . . . at [a] mine" expands the meaning of "independent contractor" to cover "some parties who might not qualify as such under a strict application of traditional agency law principles." Darden, 503 U.S. at 325-26. In Darden, the Supreme Court adopted a common law test for determining who is an "employee" under the Employee Retirement Income Security Act of 1974 (ERISA), concluding that ERISA contained no language to suggest that Congress intended the term to have a meaning other than the established meaning at common law. In this case, Congress did not choose the established term "independent contractor," but rather it chose the new phrase "independent contractor performing services or construction at [a] mine." We conclude that in choosing this phrase, Congress did not intend to incorporate the common law framework for distinguishing between independent contractors and employees, but intended to establish a new statutory concept that must be interpreted, in the first instance, by the agency responsible for enforcing the provision. This broader construction is supported by the well-settled conclusion that "Congress intended the [Mine] Act to be liberally construed" to protect the health and safety of miners. Cannelton Indus., 867 F.2d at 1437.

We also conclude that a narrow common law test would thwart the purposes of the Mine Act. Under such a test, parties would be able to avoid regulation by structuring their relationships with a mine to avoid "controlling" the provision of

services.  Such "contracts, however 'skillfully devised,'" <u>Silk</u>, 331 U.S. at 715 (citation omitted), should not be permitted to allow a party to escape regulation. Although Congress chose to regulate independent contractors, the traditional counterpart to employees, there is no indication that Congress meant to regulate independent contractors but to exempt employees, as those terms are understood at common law.  In a regulatory setting such as this, there is little reason to enforce the strict distinction between employees and independent contractors that is paramount at common law.  The purpose of including independent contractors within the scope of the Mine Act was not to assign liability to one class (independent contractors) while exempting the other (employees), but to broaden the reach of the act to include all those whose presence at a mine affects the health and safety of miners.  Moreover, under a common law test, there is "no shorthand formula or magic phrase" that can easily be applied to distinguish between an employee and an independent contractor.  <u>NLRB v. United Ins. Co. of America</u>, 390 U.S. 254, 258 (1968).  Under such a test, simplicity in enforcing the Mine Act's health and safety regulations would be replaced with difficulty, as MSHA is required to apply the cumbersome common law rules each time it encounters a party performing services at a mine.  Such difficulty would impede the Mine Act's effectiveness and thus thwart the accomplishment of its purposes. Accordingly, we refuse to limit the term to its narrow common law meaning and

defer to the agency's reasonable interpretation that control is not a prerequisite for independent contractor status under the statute.[2]

Joy, nonetheless, argues that MSHA's present interpretation regarding control is not entitled to deference under Chevron because, in 1979, MSHA issued a conflicting proposal. The proposal stated that "in identifying independent contractors as operators, the critical condition is control over the area of the mine where the work is being performed." 44 Fed. Reg. 47,746, 47,746-53 (1979). In the final rule adopted in 1980, however, MSHA abandoned its earlier emphasis on control and in the preamble to the final rule concluded that "holding all independent contractors responsible for their violations will in the majority of instances improve the overall safety and health of miners." 45 Fed. Reg. 44,494, 44,495 (1980) (emphasis added).

We see no reason to refuse to defer to the agency's longstanding interpretation merely because it once issued and then retracted a conflicting proposal. "[A]n agency is entitled to consider alternative interpretations before

---

[2]Even if we were to construe the term "independent contractor" under "the general common law of agency," Reid, 409 U.S. at 740, Joy would qualify as an independent contractor. Under a common law test, Joy could escape regulation only by qualifying as an employee, i.e., a non-independent contractor. Although McElhannon, Joy's service representative, may not have controlled the provision of services or maintenance at the mine, Somerset did not supervise or control McElhannon. Thus, McElhannon cannot be characterized as an employee of Somerset under either the multi-factor test used at common law, see Restatement (Second) Agency § 220, or Joy's "control" test. In light of the undisputed facts, McElhannon was not an employee of Somerset.

settling on the view it considers most sound." Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 845 (1986) (deferring to an agency's longstanding interpretation despite the agency's earlier inconsistent proposal). But see Old Dominion Power Co. v. Donovan, 772 F.2d 92, 97 & n.6 (4th Cir. 1985) (refusing to defer to MSHA's interpretation of section 3(d) of the Mine Act in part because of its earlier inconsistent proposal).

In sum, we conclude that MSHA's interpretation--that independent contractor status is to be based not on the existence of a service contract or control, but on the performance of significant services at the mine--is a reasonable construction of the statute entitled to deference. The 1977 amendments to the Coal Mine Act broadened the reach of the statute to include persons who are present at a mine performing services, but who do not qualify as an "owner, lessee, or other person who operates, controls, or supervises a . . . mine." 30 U.S.C. § 802(d). Substantial evidence supports the ALJ and the Commission's factual finding that Joy's service representative performed significant services at the mine. Accordingly, we agree with FMSHRC that Joy is an independent contractor within the meaning of section 3(d) of the Mine Act.

**C. Joy's status as an "Operator"**

We next determine whether the term "operator" as defined in section 3(d) of the Mine Act includes all independent contractors performing services at a

mine or whether it exempts from regulation certain independent contractors, like Joy, whose only connection with a mine is limited to providing services in connection with the sale of goods. Joy asserts that we should adopt the position set forth in Old Dominion Power Co. v. Donovan, 772 F.2d 92 (4th Cir. 1985). In Old Dominion, the Fourth Circuit Court of Appeals concluded that in amending the Coal Mine Act to include "independent contractors performing services . . . at [a] mine," Congress intended to include within the definition of "operator" only those independent contractors "who are engaged in . . . the extraction process, and who have a 'continuing presence' at the mine." Id. at 97; see also National Indus. Sand Ass'n v. Marshall, 601 F.2d 689, 704-06 (3d Cir. 1979) (upholding proposed MSHA regulations that would have treated only certain independent contractors performing services at a mine as operators). Old Dominion derived these two limitations from several pieces of legislative history that the court concluded showed Congress's intent to regulate only those contractors with a sufficient nexus to mining who are at the mine more than occasionally or infrequently. 772 F.2d at 96 (citing Senate Report at 14, reprinted in 1977 U.S.C.C.A.N. at 3414, and S. Rep. No. 95-461, 95th Cong., 1st Sess. 37, reprinted in 1977 U.S.C.C.A.N. 3485, 3485). Under Old Dominion, Joy asserts that it was neither sufficiently engaged in the extraction process nor continuously present at the mine, and thus does not meet the requirements for operator status. Alternatively, Joy asserts that

- 18 -

under FMHSRC's two-part nexus test, which is a diluted version of the Old Dominion test, it is not an operator because it did not provide a service sufficiently related to the extraction process or maintain a presence in a mine that is not rare, infrequent, and attenuated. Otis II, 11 F.M.S.H.R.C. at 1922-23.

The Secretary, on the other hand, urges us to adopt the approach taken in Otis Elevator Co. v. Secretary of Labor, 921 F.2d 1285 (D.C. Cir. 1990), in which the Court of Appeals for the D.C. Circuit adopted a broad reading of section 3(d) based on the plain meaning of the statute. In construing the term "operator," the D.C. Circuit concluded that "the phrase 'any independent contractor performing services . . . at [a] mine' means just that--any independent contractor performing services at a mine." Id. at 1290. The court refused to look beyond the plain meaning of section 3(d) and rejected the approach taken in Old Dominion, in which the Fourth Circuit derived its two limiting criteria based on the statute's legislative history. Even looking to the legislative history, the court concluded that Congress's only express intent was to "include" those contractors meeting the Old Dominion criteria and found "nothing [that] expressly states an intent to cover only these independent contractors." 921 F.2d at 1290 (citing Senate Report at 14, reprinted in 1977 U.S.C.C.A.N. at 3414 ("[T]he definition of mine 'operator' is expanded to include 'any independent contractor performing services or construction at such mine.'")).

Like the D.C. Circuit in Otis Elevator, we decline to adopt either the Old Dominion approach or the Commission's diluted version of that approach. Rather, we think the definition of "operator" in section 3(d) of the Mine Act is clear and means just what it says--an operator includes "any independent contractor performing services . . . at [a] mine."  See Otis Elevator, 921 F.2d at 1290.  Although Congress may have been specially concerned with contractors who are engaged in the extraction process and who have a continuing presence at a mine, see id., section 3(d) by its terms is not limited to these contractors. Nothing in the legislative history shows a "'clearly expressed legislative intention'" to the contrary that would allow us to "question the strong presumption that Congress expresse[d] its intent through the language it cho[se]." INS v. Cardoza-Fonseca, 480 U.S. 421, 432 n.12 (1987) (citation omitted).

Joy, nonetheless, argues that Congress could not have intended a definition of "operator" that is so broad as to include mere vendors, such as the Xerox service representative who comes onto mine property to repair a copy machine. In this regard, Joy argues that the legislative history is important for what it does not contain, asserting that there is no evidence in the legislative history that Congress intended to include equipment vendors like Joy, whose only contact with the mine is in providing services pursuant to a contract of sale.  For present purposes, it is enough to conclude that we are constrained by the plain meaning of

the words Congress chose. The phrase "any independent contractor performing services . . . at [a] mine" may be broad, but its meaning is clear. In this case, Joy sent a service representative onto mine property, who, in carrying out his job, performed services at the mine. Accordingly, Joy is subject to regulation as an "operator" under the Mine Act. For the foregoing reasons, we AFFIRM.