152 F.3d 1102
 1998 O.S.H.D. (CCH) P 31,624, 98 Cal. Daily
Op. Serv. 6244,
98 Daily Journal D.A.R. 8649
D.H. BLATTNER & SONS, INC., Petitioner,
v.
SECRETARY OF LABOR, MINE SAFETY AND HEALTH ADMINISTRATION,
and Federal Mine Safety and Health Review
Commission, Respondents.
 No. 96-70877.
 United States Court of Appeals,
Ninth Circuit.
 Argued April 7, 1998.
Decided Aug. 10, 1998.
 
 Jeffrey M. Hindoien, Gough, Shanahan, Johnson & Waterman, Helena, Montana, for petitioner.
 Robin A. Rosenbluth, United States Department of Labor, Arlington, Virginia, for respondents.
 Petition for Review of a Decision of the Federal Mine Safety and Health Review Commission.
 Before: HUG, Chief Judge, REINHARDT, Circuit Judge, and REED,* District Judge.
 REINHARDT, Circuit Judge:
 
 
 1
 This petition presents the question whether, under the Mine Safety and Health Act of 1977 and its implementing regulations, independent contractors who operate, control, or supervise a mine are mine "operators" who must file "legal identity reports" with the Mine Safety and Health Administration. We hold that the Secretary of Labor's position that such independent contractors must file the reports is neither unreasonable nor in violation of the Administrative Procedure Act. We also uphold the Secretary's determination that Petitioner D.H. Blattner & Sons is subject to the applicable regulation. Accordingly, we deny its petition for review.
 
 I. BACKGROUND
 
 2
 Section 103(h) of the Federal Mine Safety and Health Act of 1977 ("Mine Act"), Pub.L. No. 95-164, 91 Stat. 1290 (1977), provides that "every operator of a coal or other mine shall ... make such reports, and provide such information, as the Secretary ... may reasonably require from time to time to enable [her] to perform [her] functions under this Act." 30 U.S.C. § 813(h). To this end, the Act's implementing regulations require every mine "operator" to file a two-page document called a "legal identity report." 30 C.F.R. § 41.20. Such reports provide the Mine Health and Safety Administration (MSHA) with information necessary to monitor the work and safety conditions at mines, to conduct inspections, and to contact appropriate parties in the case of safety emergencies at the mines.
 
 
 3
 In 1992 and 1993, MSHA officials issued to D.H. Blattner & Sons, Inc. ("Blattner"), a heavy construction company and an independent contractor, three citations for failure to file legal identity reports at three separate mining operations. Blattner challenges each citation in this petition.
 
 
 4
 The first citation occurred at the Yankee Project Mine, an open pit, heap leach gold mine owned by USMX, Inc. Blattner contracted with USMX to perform services in the pit, including drilling, blasting, loading, hauling and dumping ore and waste material. While USMX was in charge of the overall enterprise and provided all the planning and engineering for the project, Blattner did all of the actual mining and extraction of the ore. USMX simply crushed and leached the mineral once it was extracted. Blattner was also responsible for the daily supervision of its operation in the pit, including the safety of its equipment and employees and those of its subcontractor, and instructed them in safety procedures on that site. Based on these facts, a MSHA inspector determined that Blattner was required to submit a legal identity report. When Blattner refused to comply, MSHA issued it a citation for failure to file the report. Under protest, Blattner completed a legal identity report and the citation was terminated.
 
 
 5
 The second citation occurred at Van Stone Mine, an open pit lead and zinc mine owned by Equinox Resources, Inc. ("Equinox"). Blattner contracted with Equinox to blast, load and haul ore and waste materials. Equinox had overall control and direction over the mine operation. Blattner, however, was the entity that actually conducted the mining in the pit. Equinox made sure that Blattner conducted safety meetings and was responsible for safety on the property, but left Blattner in charge of monitoring health and safety conditions in the mining operations in the pit. Upon investigation, MSHA concluded that both Equinox and Blattner were mine "operators"--Equinox because it owned the mine and operated the mill, and Blattner because it was doing the mining in the pit. Once again, therefore, MSHA informed Blattner that it was required to file a legal identity report because it was responsible for safety in the pit. When Blattner refused, MSHA issued it a citation.
 
 
 6
 The third citation occurred at the Aurora Partnership Mine, an open pit, heap leach gold and silver mine owned by the Aurora Partnership ("Aurora"). Blattner contracted with Aurora to provide services in the pit, including drilling, blasting, crushing, loading and hauling ore and non-ore material, and preparing and maintaining haul roads and pit walls. Aurora periodically conducted safety audits on Blattner to ensure that its operation was safe and that it met Aurora's safety criteria. The day-to-day safety supervision, however, was once again conducted by Blattner. In June 1993, the MSHA asked Blattner to fill out a report and assume Aurora's prior contractor's legal identity number. When Blattner failed to file a report by September, 1993, MSHA issued a citation to Blattner, which under protest completed a legal identity report and assumed the former contractor's identity number.
 
 
 7
 The three proceedings were consolidated for administrative review. The sole issue before the Administrative Law Judge (ALJ) was whether Blattner was an "operator" of the mines and thus required to file a legal identity report under 30 C.F.R. § 41.20. After an evidentiary hearing, the ALJ held that Blattner was indeed an "operator" under § 41.20 because it "exercised direct supervision and control over the ore extraction process and the health and safety of the miners so involved" at the three mines. The ALJ further reasoned that since Blattner was "a production operator ... directly responsible for the safety and health of the miners working under its control, requiring Blattner to comply with § 41.20, directly promotes the safety goals of the Act." The ALJ, therefore, upheld each of the Secretary of Labor's $50 citations and dismissed Blattner's claim. The Federal Mine Safety and Health Review Commission affirmed the ALJ's decision. Blattner timely petitions for review of the Commission's final order.
 
 II. ANALYSIS
 
 8
 Blattner argues that the Secretary's insistence that it file legal identity reports contravenes both the Mine Act's regulations and the rulemaking requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 553. We consider each contention in turn.
 
 A. The Mine Act's Regulations
 
 9
 Blattner contends that the Commission plainly erred in holding that it was an "operator" for purposes of the Mine Act's regulatory requirement of filing legal identity reports. See 30 C.F.R. § 41.20. It makes two arguments in support of this position. First, Blattner argues that it cannot be an "operator" subject to the legal identity reporting requirement because it is not covered by the terms of § 41.20 and because independent contractors are covered exclusively by a different reporting requirement. Second, Blattner argues that even if independent contractors may constitute "operators"--and thereby be subject to filing legal identity reports--it was not an operator of the mines because it did not own the mines or have ultimate control over the mining operations. While we sympathize with Blattner's first argument, we must reject it on the ground that the Secretary's interpretation of the regulations is not unreasonable. We find little merit in its second argument.
 
 
 10
 1. Independent Contractors' Reporting Requirements
 
 
 11
 We will defer to an agency's interpretation of its regulations "so long as it is 'reasonable,' that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations." Martin v. OSHRC, 499 U.S. 144, 150-51, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (internal quotation marks and citations omitted); accord RLC Indus. Co. v. Commissioner, 58 F.3d 413, 415 (9th Cir.1995). We also are bound to interpret statutes and regulations that are intended to protect health and safety in a broad manner so that these goals will be actually achieved. See Secretary of Labor v. Cannelton Indus., 867 F.2d 1432, 1437 (D.C.Cir.1989); Magma Copper Co. v. Secretary of Labor, 645 F.2d 694, 697 (9th Cir.1981). The Department of Labor's actions in this case push each of these principles of interpretation and deference to its outer limits.
 
 
 12
 The legal question before us is the result of Congress's amendment of the definition of "operator" and the Department of Labor's exceptionally inept job of drafting regulations to implement that amendment. The Federal Coal Mine Health and Safety Act of 1969 ("Coal Act"), Pub.L. No. 91-173, 83 Stat. 742 (1969), provided that a mine "operator" was "any owner, lessee or other person who operates, controls, or supervises a coal mine." 30 U.S.C. § 802(d) (1976). In the late 1970's, two circuit courts held that independent contractors that operated, controlled or supervised mines qualified as "other persons" who were mine operators. See Association of Bituminous Contractors, Inc. v. Andrus, 581 F.2d 853, 861 (D.C.Cir.1978) (holding that "it makes no difference that [independent contractors] are not owners or lessees[;] the fact of their control or supervision over the designated areas or facilities ... makes them 'operators' "); Bituminous Coal Operators' Ass'n v. Secretary of Interior, 547 F.2d 240, 246 (4th Cir.1977) (same).
 
 
 13
 In 1977, Congress passed the Mine Act in order to amend and replace the Coal Act. In so doing, it amended the Coal Act's definition of "operator" to codify the Bituminous Contractors and Bituminous Coal holdings, see Cyprus Indus. Minerals Co. v. FMSHRC, 664 F.2d 1116, 1119 (9th Cir.1981); Brock v. Cathedral Bluffs Shale Oil Co., 796 F.2d 533, 535 (D.C.Cir.1986) (citing S.Rep. No. 181, 95th Cong., 1st Sess. 14 (1977)), and expanded the definition of "operator" to include independent contractors that do not operate, supervise or control mines. See Joy Techs., Inc. v. Secretary of Labor, 99 F.3d 991, 999 (10th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1691, 137 L.Ed.2d 818 (1997); Otis Elevator Co. v. Secretary of Labor, 921 F.2d 1285, 1290 (D.C.Cir.1990).
 
 
 14
 The Mine Act defines an "operator" as "any owner, lessee, or other person who operates, controls, or supervises a coal or other mine or any independent contractor performing services or construction at such mine." 30 U.S.C. § 802(d). The Act's regulations require all mine "operators" to file legal identity reports, see 30 C.F.R. § 41.20, and for that purpose define "operator" in exactly the same way as the statute, except that the relevant regulation refers to "designated" independent contractors. The regulation reads: "Operator means any owner, lessee or other person who operates, controls or supervises a coal or other mine or any designated independent contractor performing services or construction at such mine." 30 C.F.R. § 41.1(a) (second emphasis added). The Secretary has never published any regulation describing which independent contractors, if any, qualify as "designated" independent contractors, nor has she established any procedure for "designating" independent contractors.
 
 
 15
 Blattner maintains that since the Secretary has never "designated" it, or any other independent contractor, as an operator, it is not an "operator" as defined in § 41.1(a) and, therefore, is not subject to § 41.20's requirement that operators file legal identity reports. Although an independent contractor undeniably may "operate[ ], control[ ] or supervise[ ]" a mine, Blattner argues that the statutory and regulatory definition of "operator" removes all independent contractors from the general "other persons" clause under which independent contractors fell prior to the Mine Act, and places them in the specific "independent contractors" clause added by that statute. Under this construction, the regulation would create two mutually exclusive categories of operators--(1) owners, lessees, and other persons who are not independent contractors (all of whom are known as "production-operators"), see 30 C.F.R. § 45.2(d); and (2) designated independent contractors. The Secretary, on the other hand, contends that neither the statute's nor the regulation's two principal clauses are mutually exclusive and that nothing in the regulations altered the previously accepted rule that independent contractors who operate, control, or supervise mines qualify as "other person[s]" who operate mines and thus as "production-operators."
 
 
 16
 We acknowledge that Blattner's position finds considerable support in the regulations' legislative history, and we are mindful that courts should not defer to an agency's interpretation of its regulations when "an 'alternative reading is compelled by ... other indications of the Secretary's intent at the time of the regulation's promulgation.' " Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 U.S. 504, 512, 129 L.Ed.2d 405 (1994) (quoting Gardebring v. Jenkins, 485 U.S. 415, 430, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988)); accord Trustees of Cal. State Univ. v. Riley, 74 F.3d 960, 964 (9th Cir.1996). The Secretary concedes that during the Mine Act's rulemaking process the Department of Labor abandoned its proposal to differentiate among independent contractors for liability purposes by "designating" some as "operators" who would be responsible for safety violations. See Cathedral Bluffs, 796 F.2d at 535. The Secretary, in fact, stated in the notice of the final rule that became Part 41 that "[t]he status of independent contractors as operators and the attendant responsibilities will be covered by regulations to be promulgated by the Secretary which are separate from this rule." 43 Fed.Reg. 29,511 (July 7, 1978). In those separate regulations, which became 30 C.F.R. Part 45, the Department adopted the "MSHA identification number" system, requiring all independent contractors working at mines to obtain a number from the MSHA and provide it to the mine owner. The Secretary's "guidelines" to Part 45--which do not necessarily bind the Secretary, but do provide guidance to enforcement officials, see Cathedral Bluffs, 796 F.2d at 538-39--state that "[i]ndependent contractors working at mines are not required to file legal identity reports under Part 41. New procedures for the identification of independent contractors are provided in the new 30 CFR Part 45--Independent Contractors." 45 Fed.Reg. 44,498 (July 1, 1980).
 
 
 17
 Despite the force of this legislative history, we believe that it fails to demonstrate that the Secretary's interpretation of 30 C.F.R. § 41.1(a)--that independent contractors who operate, control, or supervise mines fall within the first part of subsection (a) and thus qualify as "production-operators"--is unreasonable. The Mine Act expanded the definition of "operator" to include a large group of independent contractors who were not considered operators under the Coal Act. See Joy Techs., 99 F.3d at 999; Otis Elevator, 921 F.2d at 1290. This added category of independent contractors consists of contractors who perform "services or construction" at mines, rather than the more basic production functions. It therefore seems reasonable to construe the statute's specific independent contractor phrase--"any independent contractor performing services or construction at such mine"--as referring only to those independent contractors who did not already qualify as operators under the statute's "other person[s]" provision--and not to all of the independent contractors, including those who control or supervise the operation of a mine and who were already covered by the phrase "other person[s]."
 
 
 18
 While in Part 45 the Secretary clearly abandoned the idea of differentiating between independent contractors for liability purposes, nothing in that Part or the Secretary's guidelines states that independent contractors will not still constitute "operators" for reporting purposes when they either satisfy the statute's first definition of that term, i.e., the definition of a "production-operator," or when they satisfy the second and are "designated" by the Secretary. Thus, the regulation's cryptic reference to "designated" independent contractors may be reasonably construed to apply to those contractors who do not qualify as production-operators but are "designated" by the Secretary. In other words, it is reasonable to conclude that the Secretary, when adopting the regulation, tracked the language of the statute, and then provided that some of the contractors who do not qualify under the statute's first clause as production-operators--but who are covered by the statute's second clause, i.e., independent contractors who perform services or construction at a mine--would nevertheless be required to file legal identity reports. In order to identify those independent contractors covered by the second clause whose functions were sufficiently important to warrant the filing of identity reports, and to exclude those whose work would not significantly affect safety, the Secretary provided that she would "designate" those members of the second group who would be required to file reports. That the Secretary never made any such designations serves only to prevent those independent contractors who are not "production-operators" but might perform functions justifying the filing of legal identity reports from being classified as "operators" and incurring the obligation to do so. Finally, in this connection, we note that the Secretary's decision to require all independent contractors to obtain an MSHA number and provide it to the mine owner is in no way inconsistent with her decision to require independent contractors who qualify as production-operators to file identity forms as well.
 
 
 19
 We also deem it significant that the Secretary's construction of the regulations most effectively furthers her ability to achieve the Mine Act's goal of protecting health and safety in mines. See Cannelton Indus., 867 F.2d at 1437. Her interpretation requires any party that exercises day-to-day control over the safety practices and conditions at mines to file legal identity reports with the MSHA. This, in turn, provides the MSHA with the information necessary to monitor the health and safety conditions at those sites--information, such as the name and address of the person in charge of health and safety at the mine, that is not required under the MSHA identity number system. Compare 30 C.F.R. § 41.11 with § 45.4. That the Secretary has decided not to differentiate between independent contractors for the purpose of issuing safety violations does not mean that she may not require certain independent contractors who have significant control over mining operations to file legal identity reports to assist her in responding to emergencies and monitoring the mines to prevent health and safety violations in the first instance. In any event, all Blattner had to do to avoid penalties was to file legal identity reports when the MSHA asked it to do so--a modest burden compared to the importance of the health and safety concerns involved.
 
 
 20
 2. Blattner as a "Production-Operator"
 
 
 21
 Blattner contends that even if independent contractors may qualify as production-operators under § 41.1(a), it was not a production-operator at the three mines. Its argument consists of two steps. First, Blattner asserts that there can be only one production-operator at a given site. Second, it maintains that because it was not ultimately responsible for "exploration, planning, engineering, delineation of ore bodies, and oversight of the mine[s]," it was not the production-operator. We reject Blattner's arguments.
 
 
 22
 First, nothing in the Act, regulations, or the guidelines suggests that there can be only one production-operator at a mine. In fact, all courts to address the issue have held that there can be more than one statutory operator at a given mine. See International Union, UMWA v. FMSHRC, 840 F.2d 77, 82 (D.C.Cir.1988) (holding that "it is absolutely clear that Congress was aware that there could be more than one 'operator' of a single mine"); Bituminous Coal Operators' Ass'n, 547 F.2d at 246 (same). Blattner offers no reason why there cannot also be more than one producer-operator under the regulations. Indeed, the "legal identity report" regulation itself requires "[e]ach operator," not the operator, to file such a report. 30 C.F.R. § 41.20. This language strongly supports the view that mines may have multiple operators. It also most effectively furthers the objective of the legal identity requirement; that is, it allows the MSHA to obtain necessary information regarding all entities who maintain significant control over the health and safety conditions at mines.
 
 
 23
 Second, the Commission's factual findings must be upheld if they are supported by substantial evidence, 30 U.S.C. § 816; Alderman v. SEC, 104 F.3d 285, 288 (9th Cir.1997), and there is little doubt that substantial evidence supports the Commission's finding that Blattner "operate[d], controlle[d], or supervise[d]" the mines within the meaning of 30 C.F.R. § 41.1(a). At all three mines, Blattner was in charge of mining in the pit and, in doing so, was directly responsible for supervising the health and safety conditions in the processes of drilling, blasting, loading, hauling and dumping the ore and waste material. At all three mines, Blattner used and maintained its own equipment and supervised, trained and directed its employees and subcontractors in the pit areas. Blattner was also the only entity that was continuously present at the mine pits. Thus, although it received directions from the owners about where to mine and which material to keep and to process, Blattner clearly exercised sufficient control over the day-to-day working conditions at the mine to warrant the conclusion that it was operating, controlling, or supervising the mines.
 
 B. Administrative Rulemaking
 
 24
 Blattner contends that even if the Commission's holding that it is an "operator" under the Secretary's interpretation of the term is reasonable, the Secretary's current interpretation of § 41.1(a) nonetheless violates the APA's rulemaking requirements because it constitutes a reversal of policy without a requisite "notice and comment" period.[1] We disagree. The Secretary's position in this case, even assuming that a litigation position is subject to the APA's rulemaking requirements, does not violate the APA's requirements.
 
 
 25
 Section 553 of the APA requires agencies to submit all proposed "legislative rules" to a notice and comment period. See 5 U.S.C. § 553(b). Agencies, however, need not follow such a course before adopting "interpretive rules." 5 U.S.C. § 553(b)(3)(A). Assuming that the Secretary's position in this case that independent contractors may constitute "producer-operators" is a rule, it is an interpretive rule and, therefore, not subject to the APA's rulemaking requirements.
 
 
 26
 Interpretive rules " 'are those which merely clarify or explain existing law or regulations.' " Alcaraz v. Block, 746 F.2d 593, 613 (9th Cir.1984) (quoting Powderly v. Schweiker, 704 F.2d 1092, 1098 (9th Cir.1983)); see also Batterton v. Marshall, 648 F.2d 694, 705 (D.C.Cir.1980) (stating that an interpretive rule "serves an advisory function explaining the meaning given by the agency to a particular word or phrase in a statute or rule it administers"). Conversely, "[i]f a second rule repudiates or is irreconcilable with a [prior legislative rule], the second rule must be an amendment of the first; and, of course, an amendment to a legislative rule must itself be legislative." National Family Planning & Reprod. Health Ass'n v. Sullivan, 979 F.2d 227, 235 (D.C.Cir.1992) (quotation marks and citation omitted). In addition, a rule that "effect[s] a change in existing law or policy" is legislative. Powderly, 704 F.2d at 1098.
 
 
 27
 Nothing in the Secretary's position that independent contractors such as Blattner may be considered "operators" that are required to file legal identity reports "repudiates or is irreconcilable with" Part 45's separate reporting requirements; nor does anything in the Secretary's position effect a change in policy. As discussed above, an independent contractor, in addition to satisfying its Part 45 registration requirement, may also be considered a "producer-operator" and may be required to file a legal identity report.[2] Contrary to Blattner's assertion, the Secretary's position may fairly be considered nothing more than an interpretation of existing rules. Because an unchallenged and unbroken line of case law, commencing at a time prior to the enactment of the Mine Act, holds that independent contractors may be mine operators, the Secretary's position that independent contractors may under the regulations be considered "other persons" that operate mines merely "reminds parties of existing statutory duties," National Family Planning, 979 F.2d at 236, under the Mine Act.
 
 III. CONCLUSION
 
 28
 The Secretary's position that an independent contractor such as Blattner that "operates, controls or supervises" a mine may constitute an "operator" for purposes of the reporting requirements in 30 C.F.R. § 41.20 constitutes a reasonable interpretation of the relevant regulations. Her adoption of that position does not violate the APA's rulemaking requirements. We thus deny the petition for review, thereby allowing the Secretary's imposition of civil penalties.
 
 
 29
 DENIED.
 
 
 
 *
 Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation
 
 
 [1]
 To a large extent, Blattner also argues that the Secretary's interpretation violates the APA because it is unreasonable, or plainly erroneous. We have already rejected this argument, however, by our holding in section II.A that the Secretary's interpretation of the regulations at issue is not unreasonable
 
 
 [2]
 It is irrelevant for APA purposes whether the Secretary's position in this case is inconsistent with the MSHA's guidelines, since guidelines, under 5 U.S.C. § 553(b)(3)(A), do not constitute legislative rules in the first instance. See Orengo Caraballo v. Reich, 11 F.3d 186, 196 (D.C.Cir.1993) (holding that only when a second rule is "irreconcilable with a prior legislative rule" must the second rule be deemed legislative (quotation marks and brackets omitted))