In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-1752

NORTHERN ILLINOIS STEEL SUPPLY COMPANY,

*Petitioner*,

*v.*

SECRETARY OF LABOR, FEDERAL MINE SAFETY AND
HEALTH ADMINISTRATION, AND FEDERAL MINE SAFETY
AND HEALTH REVIEW COMMISSION,

*Respondents*.

On Petition for Review of a Decision of the
Federal Mine Safety and Health Review Commission.
Nos. 99-RM-78 & 99-M-120.

ARGUED OCTOBER 23, 2001—DECIDED JUNE 20, 2002

Before HARLINGTON WOOD, JR., CUDAHY, and KANNE,
*Circuit Judges*.

HARLINGTON WOOD, JR., *Circuit Judge*.  Northern Illi-
nois Steel Supply Company ("NIS") is a small,[1] family-
owned business that sells prime domestic steel products,
including pipes, tubing, bars, plates, and beams, to busi-
nesses and individuals in Northern Illinois and Indiana.
One of NIS's customers is Vulcan Material Company ("Vul-

---

[1]  NIS employs a total of forty-one people.

can"). Vulcan operates a limestone extraction and crushing operation ("the Quarry") in Romeoville, Illinois. The Quarry is a mine subject to the jurisdiction of the Mine Safety and Health Administration ("MSHA"). In the present action, NIS is contesting a citation for a violation of the Federal Mine Safety and Health Act of 1977 ("the Mine Act"), 30 U.S.C. § 801 *et seq.*, that was issued by MSHA to an NIS driver during a delivery of steel to Vulcan. Both an Administrative Law Judge ("ALJ") and the Federal Mine Safety and Health Review Commission ("the Commission") held that the citation should be enforced. NIS then filed a timely Petition for Review of the Commission's order in this court.

## I. BACKGROUND

When Vulcan wants to purchase steel, it contacts NIS and places an order. NIS then delivers the steel to the Quarry on flatbed trucks driven by NIS employees. NIS does not charge Vulcan for delivery of the steel. When steel is loaded onto a flatbed at the NIS plant, it is secured to the truck by wire ropes or metal chains which are tightened with a winch-like device. The load is also surrounded by a metal sling or lifting chain, which allows the steel to be lifted onto and off of the flatbed.

When the NIS drivers reach the Quarry with a delivery for Vulcan, they drive their trucks down an access road to the delivery point. The delivery point varies and is usually near the project where the steel is going to be used. Once a truck reaches its delivery point, the steel is unloaded using Vulcan owned and operated equipment, including cranes with hoists, forklifts, and loaders. At the time the citation in question was issued, NIS and Vulcan had been involved in a business relationship for approximately two years. Prior to the issuance of the citation, the NIS drivers usually facilitated the unloading of the steel by loosening the wire ropes or metal chains securing the load to the

truck. On "rare occasions," estimated to be ten to fifteen percent of the time, the NIS driver would also guide the hook of a crane hoist into the lifting chain, an action known as "rigging" the load. It was estimated that NIS made deliveries to the Quarry once or twice a week, and the parties stipulated that the drivers spent approximately twenty to thirty minutes at the Quarry in connection with each delivery.

On January 28, 1999, an NIS driver made a delivery of steel to the Quarry. An inspector from MSHA was present at the Quarry on that date. The mine inspector testified that he was walking in front of the Quarry's maintenance shop when he saw the NIS flatbed truck. The truck was parked, and the inspector saw a man on top of the steel on the flatbed. The man was guiding a hook from a crane into the lifting chain so that the steel could be removed from the truck. The man was standing approximately five-and-a-half to six feet above the ground, and, while he was wearing a hard hat, he was not "tied off" with a safety belt and line to prevent him from falling. A Vulcan employee was running the equipment used to unload the steel, and there were two other miners in the area, but no Vulcan supervisor was present. The mine inspector walked to the truck, and while the inspector was approaching the truck, a Vulcan management official arrived on the scene.

The mine inspector believed the man on the truck was in danger. Originally, the inspector thought the man was a Vulcan miner, but when he spoke to the man, the man identified himself as the NIS truck driver. The inspector made the driver climb down off of the truck and explained the dangers of working at such a height without a safety belt and line. The driver agreed that his actions were dangerous and assured the inspector that he would not do it again. The inspector then cited NIS under 30 U.S.C. § 814(a) for a violation of 30 C.F.R. § 56.15005, which provides: "Safety belts and lines shall be worn when persons work where

there is a danger of falling . . . ." The mine inspector testified that, in issuing the citation, he believed NIS was an independent contractor performing a service, the delivery and rigging of steel, at the mine and that it, therefore, fell under the Mine Act's jurisdiction. NIS contested the citation, arguing that it was not subject to the jurisdiction of the Mine Act. When a party contests a citation issued under the Mine Act, the proceeding is adjudicated before an ALJ. The ALJ's decision is subject to discretionary review before the Commission. In the present case, both the ALJ and the Commission rejected NIS's challenge to the citation. NIS then filed a timely Petition for Review in this court.

## II.  ANALYSIS

The Mine Act, which is enforced by MHSA, regulates coal and other mines affecting commerce and "each operator" of a covered mine. 30 U.S.C. § 803. Under 30 U.S.C. § 802(d), an "operator" for purposes of the Mine Act is defined as "any owner, lessee or other person who operates, controls, or supervises a . . . mine or any independent contractor performing services or construction at such mine." NIS argues that the citation should not be enforced because MHSA erroneously concluded that NIS was an operator as defined in the Mine Act. NIS asserts it is not an operator for purposes of the Mine Act but rather a vendor completing a sale and, therefore, not subject to the jurisdiction of MHSA. The ALJ found that NIS qualified as an operator under the Mine Act because it was an independent contractor performing services at a mine and because NIS's work was closely related to the mining process and NIS had "a significant presence at the quarry." The Commission affirmed, holding that the ALJ's determination was supported by substantial evidence.

The parties disagree as to the correct standard for our review. NIS asserts that we should review *de novo* because

this appeal involves an agency's determination of its own jurisdiction, citing *United Transportation Union-Illinois Legislative Board v. Surface Transportation Board*, 183 F.3d 606, 612 (7th Cir. 1999), and *United Transportation Union-Illinois Legislative Board v. Surface Transportation Board*, 169 F.3d 474, 477 (7th Cir. 1999). Appellee the Secretary of Labor ("the Secretary") urges us to reject the cases cited by appellant and "instead adopt the principle that 'the rule of deference applies even to an agency's interpretation of its own statutory authority or jurisdiction,'" quoting *Mississippi Power & Light Co. v. Moore*, 487 U.S. 354, 381 (1988) (Scalia, J., concurring). While the Secretary correctly points out that several other circuits have granted deference to an agency's determination of its own jurisdiction, the Supreme Court has not definitively ruled on the issue. We believe that *de novo* review is appropriate and, therefore, follow the established law of this circuit as set out in the *United Transportation Union* cases, 183 F.3d at 612 and 169 F.3d at 477. *See also Bolton v. Merit Sys. Protection Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998).

The Federal Coal Mine Health and Safety Act of 1969 ("the Coal Mine Act"), Pub. L. No. 91-173, § 3(d), 83 Stat. 742, 743, the predecessor to the present Mine Act, defined operator as "any owner, lessee, or other person who operates, controls or supervises a coal mine." While this statutory language did not expressly include independent contractors, "courts interpreted this provision to include independent contractors whenever the contractors, in performing services at a coal mine, controlled or supervised all or part of the mine." *Joy Technologies, Inc. v. Sec'y of Labor*, 99 F.3d 991, 993-94 (10th Cir. 1996) (collecting cases). In 1977, Congress amended the Coal Mine Act and renamed it the Federal Mine Safety and Health Act. As a part of the 1977 amendments, Congress broadened the definition of operator under 30 U.S.C. § 802(d) to include "any owner, lessee or other person who operates, controls, or supervises

a . . . mine or any independent contractor performing services or construction at such mine." The legislative history accompanying these amendments states:

> the definition of mine "operator" is expanded to include "any independent contractor performing services or construction at such mine." It is the Committee's intent to thereby include individuals or firms who are engaged in construction at such mine, or who may be, under contract or otherwise, engaged in the extraction process for the benefit of the owner or lessee of the property and to make clear that the employees of such individuals or firms are miners within the definition of the Federal Mine Safety and Health Act of 1977. In enforcing this Act, the Secretary should be able to issue citations, notices, and orders, and the Commission should be able to assess civil penalties against such independent contractors as well as against the owner, operator, or lessee of the mine. The Committee notes that this concept has been approved by the federal circuit court in *Bituminous Coal Operators' Assn. v. Secretary of the Interior*, 547 F.2d 240 (C.A. 4 1977).

S. Rep. No. 95-181, 95th Cong., 1st Sess. 14, *reprinted in* 1977 U.S.C.C.A.N. 3401, 3414.

It is clear that NIS performed work, the delivery and occasional rigging of steel, at a mine and that, in doing so, NIS was not acting under the direction of Vulcan. Nevertheless, NIS argues that not all independent contractors performing activities at a mine are covered by the Mine Act. NIS contends that it does not qualify as an operator under the Mine Act because it performed only incidental activities at a mine and the activities it performed were not closely related to the mining process. While this circuit has not previously considered this argument, three appellate courts have. In *Old Dominion Power Company v. Donovan*, 772 F.2d 92, 96 (4th Cir. 1985), the Fourth Circuit, after

considering the legislative history set out above, concluded that the Mine Act's definition of operator includes only those independent contractors who are involved in mine construction or extraction and who have a "continuing presence" at a mine.

In *Otis Elevator Company v. Secretary of Labor*, 921 F.2d 1285 (D.C. Cir. 1990), the D.C. Circuit held "that the phrase 'any independent contractor performing services . . . at [a] mine' means just that—*any* independent contractor performing services at a mine." *Id*. at 1290 (emphasis in original). The *Otis Elevator* court rejected both the *Old Dominion* court's reliance on and its reading of the legislative history, holding that the legislative history's special reference to independent contractors involved either in the extraction process or in construction at a mine did nothing to exclude other independent contractors from coverage. The court noted, "Nothing in the legislative history expressly states an intent to cover only these independent contractors . . . ." *Id*. The court concluded that, given the absence of a clearly expressed legislative intent to the contrary, there was nothing to expand the scope of its judicial inquiry beyond the unambiguous statutory language. *Id*. at 1290-91 (citing cases). The Tenth Circuit, in *Joy Technologies, Inc.*, followed the D.C. Circuit's *Otis Elevator* approach, holding

> the definition of "operator" in section 3(d) of the Mine Act is clear and means just what it says—an operator includes "any independent contractor performing services . . . at [a] mine. Although Congress may have been specially concerned with contractors who are engaged in the extraction process and who have a continuing presence at a mine, section 3(d) by its terms is not limited to these contractors.

*Joy Technologies, Inc.*, 99 F.3d at 999 (citations omitted).

Despite its broad holding, the *Otis Elevator* court recognized that there may be a point at which an entity's

contacts with a mine would be so attenuated as to remove it from the jurisdiction of MHSA. The court expressly stated in a footnote that, because Otis conceded that it was performing "limited but necessary services," it did not need to confront the issue of whether there is a point at which an independent contractor's contact with a mine is so infrequent or *de minimis* that it would be difficult to conclude that services were being performed under the Mine Act. *Otis Elevator Co.*, 921 F.2d at 1290 n.3. Similarly, the *Joy Technologies* court based its finding that Joy was an independent contractor on the fact that substantial evidence supported the conclusion that Joy "performed significant services" at a mine and, therefore, did not reach the *de minimis* issue in its operator analysis. *Joy Technologies, Inc.*, 99 F.3d at 998-99. The Tenth Circuit declined to analyze Joy's hypothetical that the broad definition of operator would "include mere vendors, such as the Xerox service representative who comes onto mine property to repair a copy machine," stating that "[f]or present purposes, it is enough to conclude that we are constrained by the plain meaning of the words Congress chose." *Id.* at 1000.

The Mine Act does not define "services . . . at [a] mine." In the present case, NIS's contacts with the mine were clearly less significant than those of the plaintiffs in *Otis Elevator* or *Joy Technologies*. Otis contracted to provide periodic maintenance and repairs to underground elevators that carried miners into mines. *Otis Elevator Co.*, 921 F.2d at 1287. Joy, a company which manufactures and sells mining equipment, sent a service representative onto mine property to assure equipment was delivered in proper condition, to advise and assist in repairs and procuring necessary replacement parts, and to "troubleshoot" problems with equipment both above and below ground. *Joy Technologies, Inc.*, 99 F.3d at 994. In contrast, NIS drivers drove truckloads of steel to designated delivery points, loosened the restraints on the loads, and occasionally helped to rig the

load. While the steel itself was fashioned by Vulcan into catwalks, handrails, and other structures that were vital to the mining process, the work performed by the NIS drivers at the mine can only be described as *de minimis*. In fact, there is nothing to distinguish NIS's deliveries of steel from deliveries by other vendors or parcel delivery companies of supplies to be used by the miners. We need not adopt the more restrictive *Old Dominion* approach, because we believe that NIS's conduct falls outside of MHSA's jurisdiction under the plain language of the statute. Unlike Otis and Joy, NIS cannot be characterized as an independent contractor providing services at a mine because the minimal activity performed by NIS does not rise to a level that can be construed as services performed at a mine. Therefore, NIS is not subject to the Mine Act, and the MSHA citation cannot be enforced.

### III.  CONCLUSION

For the reasons set forth above, NIS's petition for review is granted, and the Commission's decision is REVERSED.

A true Copy:

     Teste:

 

                            _____
                            *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*